# Benson *v.* Laurel Hill Cemetery Co., Appellant.

*Cemetery companies — Care of lots — By-laws — Rights of lot holders.*

Where a cemetery company conveys by deed a lot in its cemetery with "the full, free and absolute right of sepulture and the exclusive use, occupation and possession for that purpose, and for all objects and purposes incident into and upon" such lot, subject to the charter of the company and its by-laws then existing, or thereafter to be enacted, a by-law enacted many years after the date of such deed, is unreasonable and void, if it provides that no person shall be permitted to enter the cemetery "for hire for the purpose of cutting grass, planting flowers, sodding and grading at the instance and direction of any lot owner."

The enforcement of such a by-law will be restrained by injunction; but in entering the decree for an injunction, the court will

BENSON v. LAUREL HILL CEMETERY CO., Appel. 243

not include the right of the lot owner to grade at will.  Cedar Hill
Cemetery Co. v. Lees, 22 Pa. Superior Ct. 405, distinguished.

Argued Nov. 9, 1916.  Appeal, No. 33, Oct. T., 1916,
by defendant, from decree of C. P. No. 5, Philadelphia
Co., June T., 1914, No. 4725, on bill in equity in case of
R. Dale Benson et al. v. The Laurel Hill Cemetery Com-
pany.  Before ORLADY, P. J., PORTER, HENDERSON, HEAD,
KEPHART, TREXLER and WILLIAMS, JJ.  Decree modified
and affirmed.

Bill in equity for an injunction.  Before RALSTON, J.
The facts are stated in the opinion of the Superior
Court.

*Error assigned* was decree awarding injunction.

*Maurice Bower Saul*, with him *John G. Johnson*, for
appellant.—This case is ruled by Cedar Hill Cemetery
Co. v. Lees, 22 Pa. Superior Ct. 405.
The opinion of this court in the Cedar Hill Case has
been followed by the Supreme Court of Connecticut:
State v. Mayor, 61 Atlantic Reporter 63 (1905).

*Owen J. Roberts*, of *Roberts, Montgomery & McKee-
han*, for appellees.—The resolutions were in derogation
of the original grants to the lot holders, and are unrea-
sonable: Johnstown Cemetery Assn. v. Parker, 59 N. Y.
Supp. 821; Ashby v. Harris, L. R. 3 C. P. 523; Graves
v. Bloomington City, 67 Ill. App. 493; Silverwood v.
Latrobe, 13 Atl. 161 (Md. Ct. of App. 1888); Commis-
sioners v. Gas Co., 12 Pa. 318; Com. v. St. Patrick's Be-
nevolent Society, 2 Binney 440.

PER CURIAM, November 19, 1917:
The numerous plaintiffs in the bill are the owners of
lots in the cemetery managed and controlled by the de-
fendant.  The bill was filed for the purpose of obtaining

an injunction to restrain the defendant company from putting into effect a certain by-law newly adopted, which, it was claimed, was unreasonable and in derogation of the rights of the plaintiff lot holders. An answer was filed and the case came on for hearing before the late Judge RALSTON. A final decree was entered granting the injunction as prayed for and the defendant company.appeals.

As we understand the facts, each one of the plaintiffs was the owner of a lot in the cemetery and acquired title thereto by deed for a valuable consideration. Each deed contained the following granting clause: "have granted, assigned, bargained, sold, released and confirmed, and hereby freely and absolutely do grant, assign, bargain, sell, release and confirm unto the said ————, heirs, executors or administrators, the full, free and absolute right of sepulture and the exclusive use, occupation and possession for that purpose and for all objects and purposes incident thereto into and upon a certain lot or piece of ground in said cemetery, &c." Later on in each deed there appeared the following: "Provided always, and it is hereby expressly agreed, stipulated and understood by and between the parties to these presents that the said right of sepulture, privileges and appurtenances hereby granted, are and shall be at all times held and enjoyed under and subject to the provisions of the charter of incorporation of the Laurel Hill Cemetery Company and of the by-laws, rules and regulations of the said company as they now exist and may be hereafter enacted and created."

The company was incorporated in 1837 and sales of lots have been continuously made from that time to the present. During all of the period from the time of the incorporation of the company down until the first of January, 1915, the grant recited was so construed, both by the cemetery company and the many lot holders, that the latter, without objection, could take charge of the adornment and beautification of their own lots and for

that purpose could make use of the services of their own gardners or such other persons as they chose to employ for that purpose. The defendant alleges that on several · occasions during the last few years there was some disturbance between such employees of the lot owners and those regularly employed by the cemetery company, arising from some infractions by the former of the regulations of the cemetery company, such as burning leaves upon the driveways, leaving horses unattended, entering the cemetery in an intoxicated condition and the like. Thereupon the company adopted a by-law, to become effective after January 1, 1915, declaring that for the protection of lot holders, to avoid disturbance or contention among workmen, for the general welfare and preservation of the cemetery, etc., "that on and after January 1, 1915, no person will be permitted to enter Laurel Hill cemetery for hire for the purpose of cutting grass, planting flowers, sodding and grading, at the instance and direction of any lot owner, and any person so offending will be treated as a trespasser." It is the contention of the appellants that such a by-law is altogether unreasonable and is in derogation of the grant under which they took title, as well as destructive of the custom which, proper and reasonable in itself, had become to all intents and purposes a part of the contract between the cemetery company and each lot purchaser.

It is of the first importance that attention be given to the language of the grant already quoted. As will be seen, it conveyed not merely the right of sepulture, and the exclusive occupation and possession of the lot for that purpose, but such use and possession applied as well to "all objects and purposes incident thereto." The latter then were just as much the subject of the grant as the right of sepulture itself, and for the accomplishment of those purposes and the exercise of those incidental rights or privileges the possession of the grantee was exclusive. For what objects and purposes, apart from the right of sepulture itself, could the grantee of such a lot

desire to have its exclusive possession?   The universality and intensity of the feeling which requires of the living, some effort to assuage the pangs caused by final separation from loved ones, by visiting their last resting places and attempting to keep them free from the ravages of time, were beautifully portrayed by an eminent jurist  many  years  ago  in  the  following  language: "Among all tribes and nations, savages and civilized, the resting places of the dead are regarded as sacred.   There memory loves to linger and plant the choicest flowers; there the sorrowing heart renews the past, rekindles into life the viewless forms of the dead, revives the scenes where once they moved and recalls the happy hours of love and friendship.   There parent and child, husband and wife, relatives and friends, with broken spirits and crushed hopes, revisit often the spot where they deposited their dead.   Who does not feel the fountains of his heart broken up and the warm gushings of emotion when standing over the green sod which covers the departed?" If it was not in response to this universally recognized sentiment that each lot owner was given the exclusive possession of his lot, we do not know to what we can refer the absolute grant of the exclusive possession of the lot "for all objects and purposes incident" to the right of sepulture.

We concede it is well within the power of the cemetery company, and altogether in harmony with the nature of the grant and the purposes of the proviso we have quoted, to adopt such reasonable by-laws as might regulate the exercise of their rights by the lot holders so as to promote the general welfare of all concerned and to bring about a proper and harmonious development of the entire property for the good of all.   We doubt not such regulation might reasonably embrace measures to preserve peace and good order among those working in the cemetery and to forbid entrance thereafter to any individual who refused obedience to such reasonable rule or regulation.   But the power to regulate is one thing, the

claim to deprive every lot holder of a part of his grant is quite another. To say that a lot owner, who by reason of age, sickness or other cause, is unable, with his own hands, to cut the grass on his cemetery lot and plant the graves of his dead with the flowers he or she may in lifetime have loved, may not send a well-behaved representative to act for him, goes we think far beyond the right to regulate and is in derogation of the grant.

We are of opinion the decree entered by the learned court below rests on a sound foundation, save in so far as it includes what is or may be meant by the term "grading." We can readily see that to permit each lot to be graded according to the particular notions of the owner might seriously interfere with the rights of other lot owners and retard or prevent any general plan of development. We shall amend the decree so that it may not include the right of the lot owner to grade at will.

We are not at all persuaded the case at bar is ruled by our earlier case of Cedar Hill Cemetery Company v. Lees, 22 Pa. Superior Ct. 405. We learn from the opinion delivered in that case the deeds made to the various lot owners conveyed to each a certain lot or lots "for the uses and purposes of a burial ground or place of sepulture for deceased human bodies, except people of color, and for no other use or purpose whatsoever, under and subject to all the rules, regulations, conditions and restrictions contained in the charter and the by-laws then or thereafter adopted." The difference in the nature and extent of the two grants it seems to us is apparent.

Without elaborating further and examining the many authorities in other jurisdictions which clearly sustain the right of the plaintiffs to the injunctive decree granted, we content ourselves with amending the second paragraph of the decree so that it may not be construed to mean that plaintiffs and other lot owners may grade their respective lots at their own will and pleasure, but in all other respects the said decree is here-

by affirmed, the costs of this appeal to be paid by the appellant.