## Slifer et al. v. The Greenmount Cemetery Co.

*Weiss & Bennett*, for complainants.
*M. Jacoby*, for respondent.

LEVINTHAL, J., August 17, 1948.—In their bill in equity plaintiffs allege that although they own certain burial lots in which their deceased relatives have been interred, defendant company forbids the placing of tombstones on the graves unless a substantial sum of money be first deposited with defendant cemetery company for the perpetual care of the lots.

Defendant contends that only the "right of sepulture" was granted to the lot owners, and that such right was expressly subject to all reasonable rules, conditions and restrictions that the managers of the cemetery might in the future impose. On February 25, 1947, defendant company's board of directors adopted the following rule: "No monument or memorial shall be allowed on any family lot or single grave, unless said lot or grave is in perpetual care of The Greenmount Cemetery Company." Defendant claims that this regulation is essential for its economic welfare, is reasonable, and should be binding upon the plaintiffs, as well as all other lot owners.

Plaintiffs contend that the said rule is inapplicable to them because defendant's deeds granted them the

right of sepulture, "together with all the rights, liberties, privileges and appurtenances thereunto belonging, or in any wise appertaining"; that the right to place memorials or tombstones on their lots was vested in the grantees and their successors in title, and that defendant company could not lawfully deprive them of that right.

### Findings of Fact

1. Defendant is a corporation of the State of Pennsylvania and is the owner of premises known as the Greenmount Cemetery, situate upon a tract of land of approximately 100 acres. The said tract of land has been plotted by defendant and laid out in cemetery lots for the sale of said lots to the public.

2. Defendant, on October 24, 1902, issued a deed to Joseph H. Slifer, for lot no. 393, in section D, of the Greenmount Cemetery Company, containing 224 square feet.

3. The said Joseph H. Slifer died in June 1903 and the rights to and under the said deed have vested in Leo E. Slifer, Homer Slifer and Sally Slifer Rosenberger, children of said decedent.

4. Defendant, on October 30, 1914, issued a deed to Eva Moscat for lot no. 569, in section EG, of the Greenmount Cemetery Company, containing 120 square feet.

5. Eva Moscat died February 22, 1947, and the rights to and under said deed vested in Cecelia Gochenauer, Mary Meldru and Joseph Meldru and Edward Meldru, children of said decedent.

6. Defendant company is managed by a board of directors, with a superintendent and employes under their control, said board of directors having power to make appropriate rules and regulations from time to time for the government of lotholders.

7. Defendant company adopted the following rules and restrictions, inter alia: On July 14, 1924, a pro-

hibition against enclosures, either posts, rails or copings, entrance sills, artificial stones, headstones over four feet, six inches, rose bushes and hedges; on April 11, 1932, a prohibition against enclosures of posts and galvanized iron railings, and the cutting of corner posts; on April 16, 1934, a prohibition against outside gardening and care of lots, except by special permit from defendant extended only to legitimate florists and horticulturists; on October 21, 1940, a mandatory order to remove all existing rail enclosures, supporting posts and corner markings in order to improve the appearance of the cemetery as a whole and the value and appearance of remaining lots; on January 19, 1942, a prohibition against benches and chairs, existing chairs and benches being ordered removed; on April 15, 1946, a prohibition against ivy graves and marble headstones.

8. On February 25, 1947, the board of directors of defendant company adopted the following regulation:

"4. No monument or memorial shall be allowed on any family lot or single grave unless said lot or grave is in perpetual care of The Greenmount Cemetery Company."

9. All lot holders have been permitted to care for their individual lots personally, subject to the rules and regulations of defendant company, and by special permit from defendant company have been permitted to employ legitimate florists and horticulturists only, to act as their agents in gardening and similar care of lots owned by them, likewise subject to the rules and regulations of defendant company. At no time has grading of any character been permitted except by employes of defendant company.

10. Prior to the adoption of the resolution of February 25, 1947, lot holders were not required to subscribe for perpetual care of their lots before erecting monuments; provided, however, that said lot holders

were required to conform to the rules and regulations of defendant company as duly enacted from time to time relating to the size, material and construction of said monuments and, provided further, that all foundations for said monuments were required to be built by agents of defendant company at the expense of said lot holder.

11. Joseph H. Slifer in his lifetime erected a monument in the center of lot no. 393, in section D, without any requirement by defendant company that the lot be placed in perpetual care. The daughter of decedent, Joseph H. Slifer, erected two headstones—one for her mother and another for her father—upon lot no. 393, in section D, without being required to place the lot in perpetual care.

12. Defendant company, pursuant to said regulation of February 25, 1947, advised Leo E. Slifer that lot no. 393, in section D, of said cemetery would require an endowment of $700 for perpetual care thereof if he desired to erect additional monuments thereon and that said sum was payable as follows: $300 on account and the balance in convenient installments. Said defendant company further advised that if the headstones were removed and the proposed marker eliminated, the sum required for perpetual care would be $550.

13. Defendant company, pursuant to said regulation of February 25, 1947, advised Cecelia Gochenauer that lot no. 569, section EG, of said cemetery, upon which no headstone or monument is now erected, would require an endowment of $280 for perpetual care thereof, if a monument was placed thereon.

14. The deeds to the said lots recited, inter alia, as follows:

"The Greenmount Cemetery Company have granted, bargained, sold and confirmed . . . the exclusive and entire right of Interment or Sepulture in the Burial

Lot . . . Together with all the ways, rights, liberties privileges and appurtenances thereunto belonging, or in any wise appertaining.

"TO HAVE AND TO HOLD the same, unto and for the only proper use and behoof of the said his heirs at common law, and assigns, forever, for the purpose of Sepulture only. AND upon his express condition, nevertheless, that no sale or transfer of the said Burial Lot or right of Interment shall at any time, by the said                     or any future owner thereof, be valid without the permission and approval of the Managers, under their corporate seal, duly attested (an entry whereof shall be made on the books of the Company), and on payment of ten per cent of the purchase-money on each transfer, to the Treasurer, to be applied to the Improvement Fund. AND PROVIDED, that the above named or any future owner of said Burial Lot, shall not at any time or times hereafter demand or receive or permit or suffer to be demanded or receive, any compensation whatever for any Interment therein. AND PROVIDED, ALSO, that the bodies of white persons only shall be interred in said Burial Lot or Lots. AND PROVIDED, ALSO, that the hereby granted premises shall be subject to the rules, conditions and restrictions made and to be made by the Corporators or Managers of said Cemetery, for the government of lotholders, visitors to the Cemetery, and the burial of the dead. AND MOREOVER, that in default of a devisee or known kindred of any owner of said Burial Lot, the same shall revert to the said Corporation, and be so preserved as not to disturb the remains of any person buried therein."

15. This bill in equity has been filed by plaintiffs on behalf of themselves and those in interest with them in order to enjoin defendant company from enforcing

said rule (adopted February 25, 1947) set forth in finding no. 8.

## Discussion

There is no doubt that the regulation in issue was adopted by the board of directors of defendant company in good faith and as a protective measure for the cemetery. Beginning in 1909, all operators of cemeteries in Pennsylvania were required by statute to set aside 10 percent of the gross amount received from the sale of lots for the care and preservation of grounds and the renewal and repair of buildings and property. Such a maintenance reserve fund was established by defendant for the purpose of caring for that part of the cemetery in which rights of sepulture had not been sold. Defendant cemetery has about 30 acres of unsold ground, and, it was testified, sales of the undisposed lots have been hindered and impeded because of the unsightly appearance of the cemetery occasioned by the failure of many individual owners to care for their lots.

Costs of labor have increased and income of trust funds have decreased in recent years. Furthermore, lots that have monuments thereon are more expensive to maintain than unimproved lots. It was also pointed out that although defendant has been operating at a deficit for many years, it has cut the grass on the neglected lots in order to improve the general appearance of the cemetery and to stimulate the sales of unsold lots.

The cost of perpetual care was reasonably based upon the square footage of the lot or grave and the number of monuments or markers thereon.

It was also urged that without a provision for perpetual care it is impossible to maintain a cemetery as a permanent burial place, because experience has demonstrated that descendants too frequently fail to per-

form their moral duty to care for the graves and tombstones of their ancestors and relatives.

Defendant relies upon the case of Marshall v. Pilots' Association, 18 Pa. Superior Ct. 644 (1902), as authority for the proposition that plaintiffs are bound by the rule adopted by defendant company, despite what appears to be their vested right to erect monuments on their burial lots. In that case the Pilots' Association originally passed a bylaw awarding to any member who lost his license compensation at the rate of half his pay. Plaintiff became disabled and his license as a pilot was revoked. He received half his pay for a time, and then the association amended the bylaw to provide that a member who was permanently disabled should receive but $50 per month.

The Superior Court held that plaintiff was bound by the amended bylaw. In the course of his opinion, Judge Orlady said (p. 649):

"It must be conceded that a by-law or regulation is a rule for future action, and an association which is authorized to make such by-laws as may be necessary to secure the objects for which it is created, has power to change them by a legal amendment when necessary to carry out such objects. . . .

"It is essential to the control and disposition of conditions which cannot be anticipated when an association is formed, that it should have authority to provide for them by the amendment or repeal of a by-law, or by enactment of a new one. The power to repeal and amend is an incident to the power to enact. . . .

"It is not reasonable to hold, that where an association at its formation has not anticipated all possible contingencies necessary to its successful government, that the association must follow the original lines even to inevitable bankruptcy by paying improvident allowances rather than by preserving the association; but it should carry out the purposes of its formation by

the enactment of a reasonable amendment to meet the overlooked contingency. . . .

"No one has a right to presume that by-laws will remain unchanged. It is not claimed that the organic law of the association forbids the amendment. The permanence and welfare of the pilots' association required that there should be some special provision made for those who became permanently disabled. It would be unreasonable and inequitable that the permanently disabled should receive the half pay which is produced entirely by the young and active members. Fifty dollars per month was considered a reasonable contribution from the funds of the association to such permanently disabled members. It can readily be seen that on the half pay basis and with the increasing numbers of aged and disabled members the resources of the association would be so drained as to destroy its object, and new pilots would be deterred from assuming such a liability in becoming members."

The similarity of the economic problems motivating the adoption of the new rules by the Pilots' Association there and the cemetery company here, is striking, and the language of Judge Orlady presents a persuasive argument in support of defendant's contention that the regulation in the instant case is reasonable and binding upon plaintiffs. Counsel for defendant has, however, overlooked the important fact that the Superior Court's decision was reversed by the Supreme Court. Mr. Justice Mitchell in his opinion reported in 206 Pa. 182 (1903), said:

". . . when plaintiff's rights to a special benefit accrued . . ., they became fixed and thereafter could only be changed by mutual consent. . . . When subsequently the association chose to alter its by-laws in order to differentiate disabilities and class them as temporary or permanent with different results in regard to benefits, it could not affect the rights of plain-

tiff already vested. However binding in future cases, such change was inoperative and a nullity as affecting plaintiff."

The grant of the burial lots in the present case is expressly subject to all "rules, conditions and restrictions" then in effect or thereafter to be adopted by defendant's managers. It is conceded that only reasonable regulations are binding upon the lot owners. In support of its contention that the rule in this case is reasonable and enforceable, defendant cites Cedar Hill Cemetery Co. v. Lees, 22 Pa. Superior Ct. 405 (1903). On the other hand, plaintiffs rely upon the more recent case of Benson v. Laurel Hill Cemetery Co., 68 Pa. Superior Ct. 242 (1917), as supporting their contention that the rule is inoperative and a nullity as to them.

In the former case, a cemetery company adopted a regulation that lot owners could hire no one to care for their lots except the cemetery company itself. The court held that a gardener in the employ of individual lot owners, but without contractual relations with the cemetery company, had no standing to complain that the regulation was invalid. But the decision did not rest merely upon this technical ground. The court, considering at some length the reasonableness of the regulation, said:

" 'The conveyance of an exclusive right of interment or sepulture in a lot to be held for that purpose only and subject to the regulations of the cemetery, whether it be in the form of a deed with the customary words of inheritance, or of a mere certificate, is the grant of a mere license or privilege to make interments in the lot described, exclusively of others, as long as the ground shall remain a burying ground. 2 P. & L. Dig. of Dec. 2507.' Ordinarily, a cemetery is laid out and planned according to a fixed scheme as to improvement of the real estate, the erection of monuments, enclosure

of lots, the character of trees and shrubbery to be planted and ornamentation in general. Anything which interferes with this general scheme is not only detrimental and injurious to the scheme itself but to every lot which enters into the combination. It is of the first importance, therefore, that the association should assume and retain the absolute control, as is sought to be done in and by the deeds of conveyance and the by-laws and regulations of the plaintiff company, of the erection of monuments and partitions between lots, the planting of trees and shrubbery and the general subject of ornamentation. This, in the nature of the case, can be done only under the supervision of one person, and in this case that person is the superintendent of the cemetery who acts under the direction of and is supposed to be familiar with the plans and purposes and general scheme of improvements of the association. Not only are the by-laws under consideration essential to the preservation of this general scheme of improvement and ornamentation, but they are necessary as well to preserve the rights of the individual lot owners which are carefully preserved in the deed under which the lots are conveyed: The plaintiff company 'reserving the right at all times to remove from said lot any tree or shrubbery which may in any manner obstruct the view of the cemetery grounds or which may become injurious or objectionable to the owners of adjoining lots.' It is difficult to see how the rights of individual lot owners in respect of those things which are or may become objectionable in adjacent lots can be properly conserved without some such general and indeed exclusive control of the ornamentation of all lots as is provided for in the by-laws to which exception is taken.

"A serious difficulty of practical administration can readily be foreseen, if the contention of the defendant be correct. The plaintiff association must necessarily

employ a sufficient number of skilled men to care for all the lots under its general supervision. If lot holders were permitted to employ others indiscriminately, not only would the difficulties heretofore spoken of be indefinitely multiplied but the plaintiff's employes might be idle.

"Upon all grounds, therefore, it seems to us clear that the by-laws are not only reasonable but necessary to efficiency and successful administration."

In the subsequent case of Benson v. Laurel Hill Cemetery Co., supra, defendant enacted a bylaw providing that no person shall be permitted to enter the cemetery "for hire for the purpose of cutting grass, planting flowers, sodding and grading at the instance and direction of any lot owner." It was held, in a per curiam opinion, that the regulation was in derogation of the original grants to the lot owners and unenforceable as to them. The court distinguished the Cedar Hill Cemetery case by pointing out that the language of the grant was far more restricted than in the case before it. It was pointed out that the deed of the Laurel Hill Cemetery conveyed the lot "with the full, free and absolute right of sepulture and the exclusive use, occupation and possession for that purpose, and for all objects and purposes incident thereto" . . . subject to the charter of the company and its "by-laws, rules and regulations" then existing or thereafter to be enacted. In declaring the regulation unreasonable, the court said:

"We concede it is well within the power of the cemetery company, and altogether in harmony with the nature of the grant and the purposes of the proviso we have quoted, to adopt such reasonable by-laws as might regulate the exercise of their rights by the lot holders so as to promote the general welfare of all concerned and to bring about a proper and harmonious development of the entire property for the good of all.

We doubt not such regulation might reasonably embrace measures to preserve peace and good order among those working in the cemetery and to forbid entrance thereafter to any individual who refused obedience to such reasonable rule or regulation. But the power to regulate is one thing, the claim to deprive every lot holder of a part of his grant is quite another. To say that a lot owner, who by reason of age, sickness or other cause, is unable, with his own hands, to cut the grass on his cemetery lot and plant the graves of his dead with the flowers he or she may in lifetime have loved, may not send a well-behaved representative to act for him, goes we think far beyond the right to regulate and is in derogation of the grant."

A careful comparison of the language in the deeds in both cases discloses that actually there is little, if any, substantial difference in the nature of the grants. The Cedar Hill decision, however, stressed the limitation of the conveyance, "as set forth in the habendum clause" (p. 407), whereas the Laurel Hill decision looked to the words of the granting clause and emphasized that the deed "conveyed not merely the right of sepulture, and the exclusive occupation and possession of the lot for that purpose, but such use and possession applied as well to 'all objects and purposes incident thereto'." (p. 245).

In the instant case, the deeds of the Greenmount Cemetery Company conveyed "the exclusive and entire right of interment or sepulture together with all the ways, rights, liberties, privileges and appurtenances thereto belonging, or in any wise appertaining." This language is quite as extensive and all-inclusive as that contained in the deeds of the Laurel Hill Cemetery. (It may also be noted that the Cedar Hill Cemetery case is cited in an annotation in 32 A. L. R. 1408 as representing the minority view regarding the absolute right of lot owners to care for their lots, either them-

selves personally or through agents of their own selection.)

Defendant also relies on the case of Campbell v. Neshannock Presbyterian Church, 153 Pa. Superior Ct. 246 (1943), as indicating that the rule in the instant case is reasonable. The regulation there required that in all cases where a tent was used for burial, the equipment must be provided by the cemetery company and used under the supervision and control of the superintendent. That regulation was held enforceable, but the court pointed out that it affected only very slightly, if at all, any of the fundamental rights of the lot holders. The court further stated that there was no interference "with the right of the owner or his agents to beautify and decorate graves, or to improve his lot, as in Benson v. Laurel Hill Cemetery Co. . . ." The effect of this regulation is confined to promoting a safe and efficient administration of defendant's affairs and at the same time protects other lot holders in the preservation of their lots. "It could hardly make any difference to lot owners whether the lowering device, tent and artificial grass are chosen by the corporation or by the funeral director."

The case of Dries v. Evans Cemetery Co., 109 Pa. Superior Ct. 498 (1933), is also relied upon by defendant. There a regulation requiring that all interments be made in an outer wall of stone, brick or concrete was held to be reasonable. The rule was adopted to avoid future sinking of graves and the incidental expense of levelling the ground after subsidence. The court held that the action of the trustees was clearly justified as a reasonable regulation.

It is clear that in the last two cited cases *regulatory* provisions were held binding against lot owners. The rule enunciated in the Benson case has not been departed from. Coercive bylaws in derogation of vested rights are invalid and unenforcible. The attempt to

deprive the lot owner of the right to erect a memorial or monument unless he first deposit a fund with the cemetery company for perpetual care by it cannot be justified as merely regulatory. Even in the Cedar Hill case, where the regulation provided that if the lot owner desired to hire anyone to care for his lot he must engage the cemetery company to do the work for him, the cemetery company did not attempt to forbid the lot owner himself personally to do the work of caring for the lot. The practical effect of the rule adopted by defendant in the instant case would be to deprive plaintiffs of the right themselves to care for their lots, if they wish to erect monuments or headstones thereon. In order to obtain a permit to erect a memorial, plaintiffs would be compelled to place the graves in the perpetual care of defendant company, thus, in effect, depriving plaintiffs of their vested and natural right personally to maintain and care for the burial places of their departed relatives.

It is obvious that the right of sepulture contemplates more than the bare use of the soil as a place wherein to deposit the coffin. In the case of Mitchell v. Thorne, 134 N. Y. 536 (1892), the court said: "The right to bury . . . undoubtedly includes the right of making mounds over and erecting stones and monuments at the graves." Likewise, in Thompson v. Deeds, 93 Iowa 228 (1895), where a daughter assented to her father's burial in her lot, the court held that she may not be heard to say that his wife shall not erect a monument thereon. Said the court:

"When plaintiff consented to the burial of her father in her lot, she knew, or ought to have known, that that consent involved the right on the part of his widow to manifest her appreciation of and affection for the deceased in the usual way, followed from time immemorial by those who respect and revere their dead."

The decision in Mansker v. Astoria, 100 Oregon 435 (1921), presents the identical issue involved in the instant case. That was a suit by a lot holder against the city's cemetery commission to enjoin the enforcement of a regulation like the one adopted by the Greenmount Cemetery Company. The facts were substantially the same: Lots were considerably run down, the commission had no funds for care except those allocated to general maintenance of roads and walks, and none of these funds could be used for the uncared for lots. The commission conceived of the endowment plan as the solution to its economic problem and enacted a rule making the plan applicable to lots sold before the adoption of the plan. Lot owners would not be issued burial permits nor would they be allowed to make any alterations to old monuments or erect any new monuments unless they subscribed to a fund for perpetual care of their lots by the commission. The court said:

"The concrete question for decision is: Can the Commission by compulsion bring within the embrace of the endowment plan all lots which were sold prior to the adoption of the plan? . . . What did the conveyance pass to the plaintiff? What rights did she acquire? . . . The right . . . is in reality *sui generis*. . . . The right of burial is a privilege or license to be enjoyed so long as the place continues to be used as a burial ground. . . .

"The privilege or license created by the conveyance, in the absence of express restrictions made at the time, includes more than the mere naked right of depositing a dead body in the ground; for with the right of interment are included the right to do so according to the custom of the neighborhood, the right to make mounds and the right to erect stones and monuments at the graves. . . . A cemetery is not only a place where the living may bury their dead, but it is also a place where they may express their affection

and respect for those dead by marking and decorating the place of interment. . . ."

Despite the financial difficulties which defendant cemetery faces, largely because of its failure initially to provide for the perpetual care of lots sold to the public, we have no alternative but to protect the contractual rights vested in plaintiffs and to grant them the relief prayed for in their bill.

### Conclusions of Law

1. The resolution adopted by defendant company on February 25, 1947, which reads:

"4. No monument or memorial shall be allowed on any family lot or single grave, unless said lot or grave is in perpetual care of The Greenmount Cemetery Company."
is in derogation of plaintiffs' contractual rights.

2. The enforcement of the resolution adopted by defendant company on February 25, 1947, would in effect be coercive of plaintiffs in compelling them to provide perpetual care for their respective lots when no such duty existed either by custom or grant at the time of their purchase.

3. That defendant company, its board of directors, officers, superintendents, managers, agents and employes, be enjoined from enforcing or attempting to enforce the resolution adopted on February 25, 1947, as against plaintiffs, and that plaintiffs be permitted to erect proper headstones and monuments in accordance with all reasonable regulations of defendant company, but without being required to provide for the perpetual care of their lots by defendant company.

### Decree Nisi

And now, to wit, August 17, 1948, it is ordered and decreed that defendant, the Greenmount Cemetery Company, be enjoined from enforcing the regulation adopted February 25, 1947, and from interfering with

the right of plaintiffs to erect proper monuments or headstones upon their respective lots in accordance with the reasonable regulations of defendant company, but without being required to provide for the perpetual care of their lots by defendant company.