## In re  Cemetery Trust

*Aaron S. Swartz, 3rd,* for petitioner.
*David B. Fitzgerald,* for respondent.

TAXIS, *J.,* June 7, 1976 — This matter originated by a petition filed on January 15, 1976, and concerns burial lots in Montgomery Cemetery at Norristown, designated as Nos. 35 and 36, Section 5, and known as the Egolf lots. These lots have been maintained since 1958 by a trust created by the executors of the will of Elisa Egolf Pratt Server, naming Montgomery County Bank (now Continental Bank) as trustee.

Petitioner is Catherine C. Ducker, daughter of one of the executors, and the upkeep of the lots is supervised by her. The Continental Bank continues to hold the assets of the trust, which amount to about $750, but because of the personal interest of petitioner, she requests that Continental Bank be discharged as trustee and that it be directed to transfer the fund to petitioner as substituted trustee. The Continental Bank does not object to this request, and the court can almost take judicial notice of the fact that corporate trustees generally desire to be relieved of these small cemetery trusts when this becomes possible. Accordingly, the discharge of Continental Bank as trustee is allowed, Catherine C. Ducker is appointed substituted trustee, and it is directed that the income of the trust hereafter be awarded to her, so long as she properly maintains the Egolf lots.

A more difficult problem is raised with respect to the right of an employe or agent of the petitioner to do work on the lots at Montgomery Cemetery, at

the direction of petitioner. Montgomery Cemetery Company has appeared in these proceedings, represented therein by its manager, Scott M. Mills. Sometime in 1975, while petitioner and her gardener were in the cemetery engaged in the landscaping and care of the lots in question, Mr. Mills appeared and prevented the gardener from continuing his work. Petitioner finished the work herself, at least to some extent, but is not in general able, because of age and health, to continue to do so. Mr. Mills used as his justification for this action, a regulation of the Cemetery Company, which reads in pertinent part as follows: "Lot holders and members of their family (but no other person without the consent of the trustees, especially obtained) will be permitted to do such work if they prefer; . . . ." This regulation referred to the care and maintenance of all lots in the cemetery, and according to the record, the regulation had been adopted in about 1899. Petitioner alleges that this regulation is invalid, is contrary to the law of this Commonwealth, and also derogates from the respect for the dead and causes great anguish and distress to their relatives and loved ones.

An answer filed on behalf of the Cemetery Company states that it has been consistent in objecting to the actions of Catherine C. Ducker, and sets forth that there was an alternative to Catherine C. Ducker being required to do the work herself: ". . . It was at all times possible for the work to be done by Montgomery Cemetery Company and the cemetery trust was set up for the express purpose of providing for such maintenance service by the Cemetery Company."

We note first that jurisdiction of the present matter is conferred upon this Division by Rule 2156 of

the Rules of Judicial Administration. We note also that petitioner has filed a motion for judgment on the pleadings, which we refuse, in the light of the fact that the Cemetery Company has appeared in the matter and filed an answer to the petition. It is appropriate to determine the merits of the case rather than to dispose of it on a procedural basis, which could easily leave the future rights of the parties in doubt.

We have studied this matter carefully, and it has been excellently briefed and argued. There are apparently two leading appellate court cases in Pennsylvania which deal with the general problem. In 1903 the Superior Court decided Cedar Hill Cemetery Co. v. Lees, 22 Pa. Superior Ct. 405, (1903), and upheld a regulation of the cemetery company which prevented a gardener, who was the agent of a lot holder, from doing work on the lot for his employer. The legal basis for the decision was that the particular grant of burial rights involved was limited to what was in effect an easement for burial. The court emphasized the right of the cemetery company to make reasonable rules and regulations for the conduct of the cemetery, and the grant to the lot owners was restricted "for the uses and purposes of a burial ground or place of sepulture for deceased human bodies, . . . and to and for no other use or purpose whatsoever, under and subject to all the rules, regulations, conditions and restrictions contained and set forth in the charter, . . . ." The care of lots was to be entrusted to the cemetery company, for a charge, and the restriction on the employment of help by lot owners individually was clear. In upholding the right of the company to enforce its regulation, the court said, "The plaintiff association must necessarily

employ a sufficient number of skilled men to care for all the lots under its general supervision. If lot holders were permitted to employ other's indiscriminately, not only would the difficulties heretofore spoken of be indefinitely multiplied but the plaintiff's employes might be idle."

However, in Benson v. Laurel Hills Cemetery Co., 68 Pa. Superior Ct. 242 (1917), apparently the last appellate court word regarding the right to restrict owners in the care of their lots, the court took what inescapably appears to us to be an essentially different attitude on the basic principles involved. A rule barring outside gardeners absolutely was stricken down, on the grounds that it was unreasonable and unrelated to any proper and legitimate purpose of the cemetery. The court distinguished the Benson case on the basis of the different language in the grant, and there is no doubt that, as expressed, the Benson grant is broader. It provides not only for the right of sepulture, but also for the carrying out of purposes incident thereto. This was interpreted to mean that what the lot owner in Benson desired to do (landscape and care for his lot by hiring a professional gardener) was proper. Perhaps we could rest our decision at this point since the grant in the instant case also includes use of " . . . the ways, avenues, rights, liberties, privileges, improvements, hereditaments and appurtenances whatsoever thereunto belonging or in anywise appertaining . . . ." The present case would clearly fall within the theory of the Laurel Hills case, if it were necessary to continue to depend on its language exclusively.

In Slifer v. The Greenmount Cemetery Co., 66 D. & C. 76 (C. P. Phila. 1948), Judge Levinthal considered a bill in equity contesting a regulation of

the cemetery forbidding tombstones on graves unless perpetual care of the same was first purchased. Numerous arguments were discussed by the court. At page 84, the court came to an analysis of the Cedar Hill and the Laurel Hill cases and discussed them at length, and recognized the fact that Laurel Hill had distinguished the older case technically on the basis of the different language of the grants. It then observed, page 87, and we agree, that:

"A careful comparison of the language in the deeds in both cases discloses that actually there is little, if any, substantial difference in the nature of the grants . . . .

"In the instant case, the deeds of the Greenmount Cemetery Company conveyed 'the exclusive and entire right of interment or sepulture together with all the ways, rights, liberties, privileges and appurtenances thereto belonging, or in any wise appertaining.' This language is quite as extensive and all-inclusive as that contained in the deeds of the Laurel Hill Cemetery.

"It is obvious that the right of sepulture contemplates more than the bare use of the soil as a place wherein to deposit the coffin. . . ."

Cases from other jurisdictions were also discussed and used to illustrate the proposition that the interest of a cemetery lot owner, or other loved ones of the deceased, does not terminate at the time of the burial, but continues indefinitely insofar as the care, use of and access to the lot is concerned. Clearly a part of the rights of interment or sepulture are the concomitant rights to have access to the gravesite and to maintain it in accordance with the love and respect which most feel for family members or friends who have died. See Benson v. Laurel Hill, supra, at 246.

In this case, the Cemetery Company has observed what it apparently feels is its legal and moral obligation, that is, to allow the owner of the lot or members of the immediate family of the deceased buried therein to maintain it. However, by its regulation it seeks to draw a line between those persons and anyone else who might be hired by them to do the same work, no matter how clothed with authority and experience this person might be. This is neither sensible, nor fair to those who cannot do the work themselves. What the company says is that amateurs may landscape the lot, but professionals may not.

Accordingly, we find that the regulation as promulgated by the Cemetery Company is in derogation of the rights granted to the lot holders, and is unenforceable by the court. It is, therefore, directed that the Montgomery Cemetery Company shall cease and desist from interfering with the care and maintenance of the Egolf lots by petitioner or her duly authorized agents.