## Campbell *v.* Neshannock Presbyterian Church, Appellant.

Argued May 3, 1943. Before KELLER, P. J., BALD-
RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and
RENO, JJ.

*H. F. Stambaugh,* with him *Thomas V. Mansell,* for
appellant.

*J. Roy Mercer,* with him *George T. Weingartner, of
Weingartner & Mercer,* for appellee.

OPINION BY BALDRIGE, J., July 23, 1943:

The plaintiff, describing himself as owner of a lot in
a cemetery operated by defendant, brought a bill in
equity to have a regulation, adopted by the defendant,
declared invalid as unreasonable and unlawful inter-
ference with his rights under the terms of the grant
of the lot to him. His prayer for relief and the proof
offered to support the averments in the bill show plainly
that his real interest is not that of a lot owner but of
a funeral director whose business is interfered with
by this regulation. He was asked if he were not in

court as a funeral director and his reply was: "I am here to give my people the best service I can give them ...... Q. The service you refer to is that of a funeral director?  A. Yes sir."

The plaintiff purchased his lot in 1916 under a deed containing the following provision: "For the purpose of human sepulcher alone, subject to the By-Laws, rules and regulations of the said corporation, now existing or hereafter to be adopted, for the care, management and control of said cemetery, and to be under the control and management of the officers of said corporation in accordance therewith."  The regulation in question, adopted January 28, 1940, is substantially the same as the one which had been in force since 1929 and reads as follows: "In the case of all burials in the cemetery of the Neshannock Presbyterian Church, where a tent, artificial grass, lowering device and other equipment incident thereto is used, the said equipment shall be provided by the Neshannock Presbyterian Church and be used under the supervision and direction of the superintendent of the cemetery."

The charge made by the appellant for the use of the tent, grass and lowering device was $12.50 and $5 where the lowering device alone was used.  The appellant prior to 1939 used its own equipment, but in that year gave a Mr. Willard the exclusive right to furnish such service and agreed to pay him $4 if the charge was $5 and $10.50 if it amounted to $12.50.

The chancellor in his original adjudication found that as the defendant was required to furnish supervision of burials by their superintendent and to see that the adjoining lots were placed in their prior condition, the small charge was fair and moderate; that the regulation was reasonable and dismissed the bill. The plaintiff filed exceptions.  The chancellor, after further consideration of the issues involved, changed his views and held that the defendant exceeded its authority in passing the regulation in question, as it

is an unreasonable limitation of plaintiff's rights of sepulcher and in derogation of the grant in his deed; that the charges made by the defendant to its lot owners under the regulation are illegal as "furnishing equipment to the lot owners at a profit not being within the province of the said defendant." He dismissed plaintiff's 15th exception and refused to find that the charges for the equipment were unreasonable and indicated that he considered the amount retained by the defendant for its supervision as not improper or excessive.

The primary question for determination is whether the regulation is, as the court below held, arbitrary, discriminatory, and therefore invalid, or as appellant contends, reasonable and lawful?

The present rule, relating solely to the temporary use of certain equipment incidental to interment, affects very slightly, if at all, any of the fundamental rights of a lot owner. There is no interference with the right of the owner or his agents to beautify and decorate graves, or to improve his lot, as in *Benson v. Laurel Hill Cemetery Co.*, 68 Pa. Superior Ct. 242, where a regulation forbidding the employees of the lot owners from cutting grass, planting flowers, etc., was held invalid. Nor is freedom of choice in matters connected with the conduct of a funeral and interment essentially curtailed. The effect of this regulation is confined to promoting a safe and efficient administration of the defendant's affairs and at the same time protects other lot owners in the preservation of their lots.

It could hardly make any difference to lot owners whether the lowering device, tent, and artificial grass are chosen by the corporation or by the funeral director; that is not a matter of vital importance. The furnishing of these accessories by the defendant tends to insure availability and dependability of the equipment. It is entirely proper for the defendant, which retained the rights of management and control of the cemetery

in its grant, to adopt regulations that give assurance competent men will be employed to do the necessary work in connection with an interment. Negligence might be charged in the moving of the tents there erected, the artificial grass laid, etc. The defendant was warranted in taking precaution against such a contingency. The evidence disclosed that the standard tent is 16 feet by 20 feet covering a larger area than a single burial lot and is secured by ropes attached to stakes driven into the adjoining lots. The chancellor's 10th finding was as follows: "The use of the burying device, artificial grass, tent and similar equipment, as customarily employed, involves the certainty of some damage to the adjoining lots by way of tramping and the driving of tent pegs, but ordinarily the inflicting of no permanent damage." This encroachment on adjoining lots should be by the employees of the defendant under the supervision of the superintendent and not outside parties. The chancellor recognized a potential liability as he stated in his 11th finding: "The negligent installation, maintenance or removal of the tent, lowering device and other equipment or their use by incompetent or unskillful persons might result in considerable damage to the lots, monuments or adornment of adjoining lots owners." The plaintiff's exceptions to these two findings were not sustained.

In *Orlowski et al. v. St. Stanislaus Roman Catholic Church Soc.,* 292 N. Y. S. 333, the defendant, who conducted a cemetery, passed a resolution that it reserved the right to provide a tent, matting, and artificial grass used at burials and make a charge therefor. Plaintiffs, undertakers and others engaged in the business of supplying that type of equipment, filed an action to restrain the defendant from enforcing the regulation. The proof established that undertakers using tents, matting, and artificial grass were compelled to encroach upon the cemetery property and other lots. The court held that while the privilege to beautify and improve

a burial lot cannot be interfered with by a cemetery association, it has the right to prescribe rules and regulations to control and supervise any encroachment on its own property and lots of others, and that therefore the regulation attacked was reasonable and accordingly the bill was dismissed.

This regulation, intended to promote the general welfare of the defendant and its lot owners, does not violate the terms of the grant and conforms to the rule recognized in this and many other jurisdictions that regulations of cemetery companies must be reasonable, equal in their operation, and uniform in their application to all owners of lots in the cemetery: *Cedar Hill Cemetery Co. v. Lees*, 22 Pa. Superior Ct. 405; 14 C. J. S., Cemeteries, §30; 10 Am. Jur., Cemeteries, §§34, 35; *Chariton Cemetery Co. v. Chariton Granite Works et al.*, (Ia.) 197 N. W. 457, 32 A. L. R. 1402. See Annotations 32 A. L. R. 1406, supplemented in 47 A. L. R. 70.

In *Dries et al. v. Evans Cemetery Company*, 109 Pa. Superior Ct. 498, 499, 500, 167 A. 237, we sustained as valid a regulation of the cemetery company providing "...... that every interment shall be made enclosed in an outer wall of stone, brick or concrete, the actual installation of which shall be made by the employees of the cemetery at cost." Former President Judge TREXLER, speaking for this court, said p. 502: "We must, of course, start out with the proposition that the people to decide this matter, in the first instance, are the trustees of the cemetery, for they are responsible for maintaining the trust and for keeping the cemetery in a proper condition and the exercise of these responsibilities must not be too minutely scrutinized."

Our conclusion is that the regulation in question is a reasonable one and is not in derogation of the grant contained in the deed.

The decree of the court below is reversed and the bill in equity dismissed. Costs to be paid by the appellee.