## Slifer et al. *v.* Greenmount Cemetery Company, Appellant.

Argued March 23, 1949. Before RHODES, P. J., HIRT, RENO, DITHRICH, ARNOLD and FINE, JJ. (ROSS, J., absent.)

*Henry W. Maxmin,* with him *Myron Jacoby,* for appellant.

*Charles J. Weiss,* with him *Jerome Bennett* and *Weiss & Bennett,* for appellees.

OPINION BY RENO, J., July 15, 1949:

The learned chancellor, affirmed by the court en banc, held a regulation of the cemetery company, requiring that lots be endowed for perpetual care as a condition precedent to the erection of monuments thereon, invalid as to owners who purchased prior to the adoption of the regulation. From its decree enjoining enforcement of the regulation against appellees, the company appealed. The decree will be affirmed.

Appellees are owners of lots by devolution, and the deeds under which they hold are identical. For the consideration of $168 the company by deed dated October 24, 1902, "granted, bargained, sold and confirmed . . . unto [Slifer's ancestor,] his heirs at common law and assigns, the exclusive and entire right of Interment or Sepulture in the Burial Lot [described] . . . Together with all the ways, rights, liberties, privileges and appurtenances thereunto belonging, or in any wise appertaining. To Have and To Hold . . . for the purpose of Sepulture . . . And provided, also, that the hereby granted premises shall be subject to the rules, conditions and restrictions made and to be made by the Corporators or Managers of said Cemetery, for the government of lot-holders, visitors to the Cemetery, and the burial of the dead."

On February 25, 1947 the company adopted this regulation: "No monument or memorial shall be allowed on any family lot or single grave, unless said lot or grave is in perpetual care of The Greenmount Cemetery Company." When appellees sought to secure permission to erect monuments on their lots they were informed that

the company would require payment of an endowment for perpetual care calculated upon the square footage of the plots before the monuments could be erected. For Slifer's lot the cost of the endowment would amount to $700, more than four times the original purchase price of the lot.

It is not necessary to decide whether appellees have a restricted fee or some type of incorporeal hereditament. Cf. *Pitcairn v. Homewood Cemetery*, 229 Pa. 18, 77 A. 1105, with *Walter v. Baldwin*, 126 Pa. Superior Ct. 589, 193 A. 146. They *do* have "the exclusive and entire *right* of Interment or Sepulture", and this right carries with it, not the implied but, the explicit right to erect monuments. *Leonard's Est.*, 343 Pa. 198, 202, 22 A. 2d 676, approving 10 Am. Jur., Cemeteries, §31.[1] This is a property right, or at least a vested interest in land, constitutionally protected against destruction, abridgment or material diminution without appellees' consent.[2] *Mt. Moriah Cemetery Assn. v. Com. ex rel.*, 81 Pa. 235. See also 14 C. J. S., Cemeteries, §25.

It is true that by the terms of the deeds the "premises shall be subject to the rules, conditions and restrictions made and to be made . . . for the government of lot-holders, visitors to the Cemetery, and the burial of the dead." The deed does not in terms refer to monu-

---

[1] For cases holding the right of burial includes the right to erect tombstones and monuments, see *Durell v. Hayward*, 9 Gray (Mass.) 248; *Buffalo City Cemetery v. City of Buffalo*, 46 N. Y. 506; *Dwenger v. Geary*, 113 Ind. 106, 14 N. E. 903; *Mitchell v. Thorne*, 134 N. Y. 536, 32 N. E. 10; *Gardner v. Swan Point Cemetery*, 20 R. I. 646, 40 A. 871; *Anderson v. Acheson*, 132 Iowa, 744, 749, 755, 110 N. W. 335; *Brown v. Hill*, 284 Ill. 286, 119 N. E. 977; *Donohue v. Fitzsimmons*, 95 N. J. Eq. 125, 122 A. 617; *Mansker v. Astoria*, 100 Ore. 435, 198 P. 199; *Oatka Cemetery Ass'n., Inc., v. Cazeau*, 242 App. Div. 415, 275 N. Y. S. 355

[2] Subject, of course, to the constitutional exercise of the police power and the right of eminent domain. 10 Am. Jur., Cemeteries, §§13, 19, 20.

ments but it may be conceded that under it the company may adopt uniform and reasonable regulations in respect to their size, location, manner of construction, and possibly other similar features. 10 Am. Jur., Cemeteries, §33. Cf. *Pitcairn v. Homewood Cemetery,* supra. But where regulations (e. g. requiring interments in walled graves or use of the cemetery's lowering equipment) have been sustained, they were found to be reasonable and not in derogation of the grant contained in the deed. *Dries v. Evans Cemetery Co.,* 109 Pa. Superior Ct. 498, 167 A. 237; *Campbell v. Neshannock Presbyterian Church,* 153 Pa. Superior Ct. 246, 33 A. 2d 33. A power to regulate is not a power to destroy. It is not and cannot be a power to diminish the grant by subsequent restrictions which impose onerous financial burdens upon the lot-holders. It does not authorize the enforcement against prior owners of conditions precedent by which the enjoyment of the *"entire* right of Interment or Sepulture" is subjected to the payment of a sum equal to four times the original purchase price.

No Pennsylvania case contravenes these fundamental principles relating to vested rights in property. Appellant relies upon *Cedar Hill Cemetery Co. v. Lees,* 22 Pa. Superior Ct. 405, and appellees stand upon *Benson v. Laurel Hill Cemetery Co.,* 68 Pa. Superior Ct. 242. Both relate to regulations governing the cutting of grass, sodding, planting of flowers, and similar services by persons other than the owners. In the first case the regulation was sustained; in the second it was declared invalid. The variance in the decisions rests upon differences in the language of the deeds. Both shed light upon the problem here presented but neither reaches the facts in this appeal.

There is a vast distinction between a regulation concerning the mowing of grass and one imposing perpetual care. If no other difference is discernible, the *moderate* cost imposed in the *Cedar Hill* case must be compared

to the enormous expenditure required in this case. The difference runs even deeper. In *Cedar Hill* this Court approved a regulation which might have increased slightly the *expense* of maintenance for lot-holders who did not "desire to personally perform such work"; here we are asked to approve a *capital* outlay, an endowment, the income of which provides the *expense* of maintenance, which the lot owner cannot avoid by doing his own work. Moreover, the Cedar Hill regulation was adopted in furtherance of a "general scheme of improvement and ornamentation", and it did not touch the essential right of erecting permanent markers, tombstones and monuments. That right was not touched or impaired by either case.

A statement in the *Benson* case (p. 246) is pertinent: "But the power to regulate is one thing, the claim to deprive every lot holder of a part of his grant is quite another."

Affirmed at appellant's costs.