Ignatowski, Appellant, *v.* St. Mary's Polish Catholic Cemetery Company et al.

Argued March 18, 1953. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, GUNTHER and WRIGHT, JJ.

*George B. Balmer,* with him *Daniel H. Huyett, 3rd,* and *Snyder, Balmer & Kershner,* for appellant.

*Mark C. McQuillen,* with him *George M. Manderbach, Gerald Ronan* and *James E. Gallagher, Jr.,* for appellees.

OPINION BY GUNTHER, J., July 14, 1953:

Frank Ignatowski, appellant, brought this suit in equity against St. Mary's Polish Catholic Cemetery and the Reverend John Mickun, Rector of St. Mary's Roman Catholic Church. Later, at the instance of the court, Dennis Cardinal Dougherty, Archbishop of the Archdiocese of Philadelphia, who held title to the property of St. Mary's Cemetery, was named additional defendant. When Archbiship O'Hara succeeded Cardinal Dougherty as Archbishop of Philadelphia, he was substituted as additional defendant.

Appellant's mother, Amelia Ignatowski, purchased a lot in St. Mary's Cemetery in 1925. She received a certificate granting her "the privilege of burial . . . subject to the Rules and Regulations that have been, or may be adopted from time to time, and to the laws, usages and discipline of the R. C. Church, in the Archdiocese of Philadelphia, relating to sepulture. . . ." Father Mickun, as manager of the cemetery, has required since 1943 that interment must be made in a concrete vault provided by the cemetery. When Amelia Ignatowski died, in January of 1949, plaintiff refused to buy the vault offered to him by Father Mickun; he buried the remains in a different cemetery, using another vault

of his own choice, then brought this suit to enjoin defendants from interfering with the interment of his mother in her lot at St. Mary's. The learned chancellor concluded that the regulation "that all graves must be vaulted with cement vaults furnished by the management, is reasonable and valid." A final decree dismissing the bill was entered by the court September 22, 1952. Plaintiff appealed.

Those charged with the maintenance and supervision of a cemetery may impose reasonable regulations for the benefit of all lot holders. A regulation is reasonable if it promotes safe and efficient administration, protects all of the lot holders by preserving their lots, and does so without serious interference in matters of personal or familial concern in the conduct of the funeral and the interment. *Cedar Hill Cemetery Company v. Lees,* 22 Pa. Superior Ct. 405; *Campbell v. Neshannock Presbyterian Church,* 153 Pa. Superior Ct. 246, 33 A. 2d 33. This regulatory power is not unlimited; it does not include, for example, the right to impose upon those owning lots the obligation to endow, at substantial expense, a "perpetual care" fund. *Slifer v. Greenmount Cemetery Company,* 164 Pa. Superior Ct. 534, 67 A. 2d 584. The question before us, therefore, is whether or not this particular regulation is a reasonable one.

In its opinion dismissing plaintiff's exceptions to the chancellor's decree nisi, the learned court below said: "The vestments of the corpse including the clothing wherein it is attired, and the casket wherein it is deposited have . . . always been considered an incident necessarily attached to the rights of burial. It appears to us that the vault is something entirely different. . ." The court cites *Campbell v. Neshannock Presbyterian Church,* supra, in which we said, at page 249: "It could hardly make any difference to lot owners whether the lowering device, tent, and artificial grass are chosen by the corporation or by the funeral director; that is not

a matter of vital importance." The court below concludes that this proposition "is equally true if we substitute for the words, 'lowering device, tent and artificial grass', the words, 'concrete vaults'." We do not agree with this conclusion. We believe, on the contrary, that the selection of a vault is a personal matter, differing not merely in degree but in kind from the rental of impedimenta incidental to a funeral service.

The case of *Dries et al. v. Evans Cemetery Company*, 109 Pa. Superior Ct. 498, 167 A. 237, held that the trustees of a cemetery company were within the limits of their authority in requiring that a vault of stone, concrete, or brick be used in every grave, in order to avoid unsightly subsidence of graves and the subsequent expense of levelling the ground. The testimony in the record reveals that there are several different types of standard vaults manufactured. Each may meet the requirements of cemetery authorities and still differ from the others in weight, thickness, details of construction, durability, and cost. These considerations may be of vital importance to those who would preserve inviolate the remains of their loved ones in the grave.

For reasons irrelevant to the issue now before us— see *Walacavage v. Walacavage*, 168 Pa. Superior Ct. 334, 77 A. 2d 723, and cases there cited—defendant cemetery furnishes only one type of vault, manufactured by a firm in Reading. There was testimony presented to the effect that this vault is in some respects inferior to those produced by other manufacturers in the community. In *Dries et al. v. Evans Cemetery Company*, supra, at page 503, we said: "It does not appear that the company compels those who are about to require a vault that they buy the vault from it." We are unwilling to narrow further the discretion left to owners of cemetery lots by striking off this reservation.

Defendants in this case required of plaintiff that he purchase and use a particular type and make of vault

from the cemetery to inter his mother's remains there. We hold this regulation to be unreasonable, a curtailment of freedom of choice in a matter of great personal concern, and a restriction not essential to the legitimate interests of cemetery management.

The decree is reversed and the record remitted to the court below, in order that it may enter a decree not inconsistent with this opinion.