43 N.J. Super. 244 (1957)
128 A.2d 281
LOUIS DI CRISTOFARO, NICHOLAS CHRISTOPHER AND LOUIS DI CRISTOFARO, JR., PARTNERS, TRADING AS PATERSON MONUMENT CO., PLAINTIFFS-APPELLANTS,
v.
LAUREL GROVE MEMORIAL PARK, CRESTHAVEN MEMORIAL PARK, INC., DEFENDANTS, AND GEORGE WASHINGTON MEMORIAL PARK, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 5, 1956.
Decided January 8, 1957.
*247 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Irving L. Hodes argued the cause for plaintiffs-appellants (Messrs. Hodes & Hodes, attorneys).
Mr. James A. Major argued the cause for defendants-respondent.
The opinion of the court was delivered by CONFORD, J.A.D.
Plaintiffs are monument makers in Paterson. They brought this action in the Chancery Division against the three defendants, incorporated associations operating cemeteries in Passaic and Bergen Counties, to enjoin certain practices which are alleged to be illegal and to interfere with the business pursuits and opportunities of the plaintiffs. The defendant George Washington Memorial Park moved to strike the complaint as not setting forth "facts upon which relief can be granted," and, in the alternative, for a severance and for a more definite statement of plaintiffs' claim. The trial court granted the motion first stated, on the ground that plaintiffs had no status to complain of the rules and regulations of the cemetery corporations.
The complaint is a vague and discursively stated recital, in ten paragraphs, which may be summarized as follows: Plaintiffs are in the business of fabricating and installing markers and monuments for graves and their market area includes the cemeteries here involved. "* * * the plaintiff has and can secure business from lot owners of said cemeteries." The defendants "have prevented and prohibited" plaintiffs from getting business from lot owners in their cemeteries by "arbitrary and unreasonable rules and regulations which, in effect, preclude the plaintiff and other dealers" from installing memorials, monuments, etc. and have reserved *248 "only unto themselves" the right to sell and erect such objects. By "unfair trade practices and advantages" defendants have "deprived the plaintiffs of an opportunity to secure legitimate business" from lot owners, have conducted legally unpermitted corporate activities and otherwise "conducted themselves illegally and in an improper manner so as to cause great loss of business unto the plaintiffs." The defendants by "unreasonable" rules and regulations have restricted and prohibited competition and obtained a monopoly in the kind of business mentioned and have enforced in an improper and unreasonable manner rules which may be reasonable on their face, all to plaintiffs' extensive loss. "By devious, specious and unlawful methods" defendants have prevented their lot owners from dealing with plaintiffs. Defendants impose "unreasonable, excessive and confiscatory costs, charges and fees" upon plaintiffs as a condition of their right to deal with lot owners, which is "tantamount to a denial of the right."
The activities of the defendants are charged to be ultra vires, unreasonable, illegal and against public policy as a menace to free enterprise. It is asserted that plaintiffs will be caused "extensive, substantial and irreparable loss" in their business, and they pray for an injunction against the enforcement of the rules and regulations, the engaging in ultra vires activities, and the "denying" or "interfering" with the "right of the plaintiffs" to erect and install memorials and monuments in the lands of the defendants.
By the liberal appraisal of the complaint required under our rules when there is an attack upon the sufficiency of a pleading, R.R. 4:8-6, Grobart v. Grobart, 5 N.J. 161, 167 (1950); Mianulli v. Gunagan, 32 N.J. Super. 212 (App. Div. 1954); Puccio v. Cuthbertson, 21 N.J. Super. 544, 546 (App. Div. 1952); Kurtz v. Oremland, 24 N.J. Super. 235 (Ch. Div. 1952), we discern an attempt by the plaintiffs to bring their grievance within two theories: (a) the activities of defendants are ultra vires and otherwise contrary to public policy, to plaintiffs' incidental commercial disadvantage; (b) wrongful interference by defendants with *249 plaintiffs' business opportunities and prospective economic advantage.
There are intimations in the opinion of the trial court and in the argument of the respondent that the complaint is defective for failure of particulars of the wrongs asserted, and much could be said in support of the position that defendants are hardly apprised by the complaint as to precisely what they are charged with. See Untermann v. Untermann, 19 N.J. 507, 518 (1955); Brown v. Brown, 2 N.J. 252, 255 (1949); Grobart v. Society for Establishing Useful Manufactures, 2 N.J. 136, 150, 151, 152 (1949); 2 Moore's Federal Practice (2d ed. 1948), § 8.13, pp. 1649-1655. We have concluded, however, that it is fairly to be determined, upon the basis of what is expressed in the complaint and such reasonable intendment in support of the allegations set forth as must be made under the rule that "all pleadings shall be so construed as to do substantial justice," R.R. 4:8-6; Jersey City v. Hague, 18 N.J. 584, 602 (1955), that in a limited sense a claim upon which relief can be granted is stated in the complaint.
So far as the complaint is cast in the guise of an effort to enforce statutory or other limitations upon the exercise of the corporate powers of the defendants or to procure a judicial determination of the legality of or reasonableness of their rules and regulations, as such, we are in agreement with the decision of the trial court that plaintiffs have no standing to complain. Davisson v. Mt. Moriah Cemetery Ass'n, 87 Mont. 459, 288 P. 612, 81 A.L.R. 1419 (Sup. Ct. 1930); Annotation 81 A.L.R. 1422; Tatman v. Rochester Lodge No. 47, I.O.O.F., 88 Ind. App. 507, 164 N.E. 718 (Ct. App. 1929); but see Tonella v. Fishkill Rural Cemetery, 135 Misc. 81, 236 N.Y.S. 663 (Sup. Ct. 1929), affirmed 229 App. Div. 732, 241 N.Y.S. 851 (App. Div. 1930), affirmed 255 N.Y. 617, 175 N.E. 338 (Ct. App. 1931); Anheuser v. West Lawn Cemetery Co., 230 Wis. 262, 282 N.W. 577 (Sup. Ct. 1938). The majority view is that the reasonableness of a cemetery rule or regulation can be questioned only by *250 one having an interest in a lot or in those buried therein. Boorstein, "Rules and Regulations of Cemeteries," 63 N.J.L.J. 305, 311 (1940). The plaintiffs cite the Tonella case, supra, as in their favor. It is not. There, true, the trial court sustained an action by a contractor engaged by a lot owner to build a mausoleum, who complained he could not fulfill his contract because of unreasonable and illegal administration of the defendant cemetery's regulations. But the Appellate Division of the New York Supreme Court stated the "action was not properly brought" by the plaintiff and permitted it to stand only because the lot owner had joined in the relief sought and thus all necessary parties were before the court. We concur in the settled view that the reasonableness of cemetery regulations, as such, is a matter ordinarily between the lot owners and the organization, alone. The legality of such regulations and any contention that they are ultra vires are, of course, properly for the attention of the Attorney-General also. Cf. Atlas Fence Co. v. West Ridgelawn Cemetery, 110 N.J. Eq. 580, 596 (E. & A. 1932). Mountainside v. Board of Equalization, 81 N.J.L. 583, 585 (E. & A. 1911). Considering the affairs of the defendants in their status as charitable trusts, the rule is that enforcement of the trust is to be had by the Attorney-General, by a trustee or by one having a special interest in its enforcement, but not by a stranger, ibid.; First Camden Nat. Bank & Trust Co. v. Hiram Lodge No. 81, 134 N.J. Eq. 303 (Ch. 1944), affirmed 135 N.J. Eq. 505 (E. & A. 1944); 4 Scott on Trusts (2d ed. 1956), § 391, p. 2760.
Normally the regularity of the exercise of a corporate franchise will be inquired into only at the instance of the Attorney-General. State v. Paterson & Hamburg Turnpike Co., 21 N.J.L. 9 (Sup. Ct. 1847); State ex rel. Stevenson v. Godwinville & Paterson Macadamized Road Co., 7 N.J.L.J. 82 (Sup. Ct. 1884); see Holloway v. Dickinson, 69 N.J.L. 72, 73 (Sup. Ct. 1903). While courts of equity have in some cases restrained the gross abuse of corporate powers where special injury to complaining individuals was *251 shown, 13 Am. Jur., Corporations, § 764, p. 792; City of Madison v. Madison Gas & Electric Co., 129 Wis. 249, 108 N.W. 65, 8 L.R.A., N.S., 529 (Sup. Ct. 1906); Hudson River Tel. Co. v. Watervliet Turnpike & Ry. Co., 135 N.Y. 393, 32 N.E. 148, 17 L.R.A. 674 (Ct. App. 1892); Fulton Light, Heat & Power Co. v. Seneca River Power Co., 119 Misc. 729, 197 N.Y.S. 319 (Sup. Ct. 1922), affirmed 206 App. Div. 731, 199 N.Y.S. 923 (App. Div. 1923), it is generally considered that the mere fact of increased competition with one's business which results from the ultra vires acts of a corporation will not afford status to challenge the exercise of such power. 7 Fletcher, Law of Private Corporations (rev. ed. 1931), § 3451, p. 598; New Orleans, Mobile & Texas Railroad Co. v. Ellerman, 105 U.S. 166, 26 L.Ed. 1015 (1882); Toye Bros. Yellow Cab Co. v. Cooperation Cab Co., 199 La. 1063, 7 So.2d 353 (Sup. Ct. 1942). Cf. New Jersey Bankers' Ass'n v. Van Riper, 1 N.J. 193 (1948); Newark Twentieth Century Taxicab Ass'n v. Lerner, 11 N.J. Super. 363 (Ch. Div. 1951); Lipman v. Forman, 138 N.J. Eq. 556 (Ch. 1946). A noteworthy case taking a different view on this point is People ex rel. J.H. Anderson Monument Co. v. Rosehill Cemetery Co., 3 Ill.2d 592, 122 N.E.2d 283, 285 (Sup. Ct. 1954). It was there held, by a closely divided court, that a monument maker having his place of business across the street from the main entrance to the defendant's cemetery, from which it derived a major portion of its business, was properly given leave to institute quo warranto proceedings to test the defendant's corporate right to sell monuments for profit, to plaintiff's substantial business injury. The proximate relationship between defendant's alleged excess of power and plaintiff's injury was held to constitute a sufficient interest on plaintiff's part, within the Illinois quo warranto act permitting the institution of this proceeding "by any citizen having an interest in the question." S.H.A. Ch. 112, § 10. Cf. N.J.S. 2A:66-6; New Jersey State Lodge  Fraternal Order of Police v. Aaron, 39 N.J. Super. 423, 429 (App. Div. 1956). But see Davisson v. Mt. Moriah Cemetery Ass'n, supra; *252 Tatman v. Rochester Lodge No. 47, I.O.O.F., supra (164 N.E., at page 720). See also the case comment criticizing the Rosehill Cemetery Co. case in 50 N.W.U.L. Rev. 410 (1955).
From the narrow perspective of the supposed status of the plaintiffs as suitors in competition with the defendant corporations, alleged to be acting ultra vires, the preferable, and, we think, the predominant view in this State and elsewhere would preclude the bringing of this action. But that conclusion does not settle the matter before us. The complaint has broader implications.
First, it is to be noted that on such a motion as this  one which, if successful, means sudden death to the action  the court searches the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary. Grobart v. Grobart, supra (5 N.J., at page 167); Jersey City v. Hague, supra (18 N.J., at page 602); Cabakov v. Thatcher, 27 N.J. Super. 404, 408 (App. Div. 1953); Cohen v. Miller, 5 N.J. Super. 451 (Ch. Div. 1949). On this motion plaintiffs are entitled to the benefit of every favorable inference of fact. Independent Dairy Workers Union of Hightstown v. Milk Drivers and Dairy Employees Local No. 680, 23 N.J. 85 (1956). Plaintiffs argue that they make a good complaint for injunction against the wrongful and continuing interference by defendants with their business opportunities, within a rule increasingly familiar to our jurisprudence. Louis Kamm, Inc., v. Flink, 113 N.J.L. 582 (E. & A. 1934); Mayflower Industries v. Thor Corp., 9 N.J. 605 (1952), affirming, on the opinion in the Chancery Division, 15 N.J. Super. 139 (Ch. Div. 1951) and 15 N.J. Super. 337 (Ch. Div. 1951); Prosser, Law of Torts (2d ed. 1955), § 107, p. 745. To the authorities exemplifying the doctrine, cited in Longo v. Reilly, 35 N.J. Super. 405, 411, 412 (App. Div. 1955), add Kurtz v. Oremland, supra, and Joseph v. Passaic Hospital Ass'n, 38 N.J. Super. 284, 291 (App. Div. 1955), certification *253 denied 20 N.J. 535 (1956). Broadly speaking, the rule protects "the right to pursue one's business, calling, or occupation free from undue interference or molestation." Louis Kamm, Inc., v. Flink, supra (113 N.J.L., at page 586). The existence of contract relations between the plaintiff and the third person is not a requisite to an action for interference. It suffices that there is "`unlawful interference with prospective economic advantage,'" Longo v. Reilly, supra (35 N.J. Super., at page 412); and see Mayflower Industries v. Thor Corp., supra (15 N.J. Super., at page 339).
We are constrained to look into the question as to whether these principles are applicable to the facts at hand, notwithstanding we have rejected the approach from the standpoint of a competitor complaining of the ultra vires acts of a corporation. Slight differences in factual emphasis or perspective sometimes cause a given situational complex to assume a different, even antithetical, jural outlook. Cf. O'Donnell v. Asplundh Tree Expert Co., 13 N.J. 319, 329 (1953). So, too, here. As will be seen, this controversy is not readily classifiable as one between business competitors in the ordinary sense. Moreover, looking at the case as one to enjoin a business tort, and in considering whether defendants have justification as a defense, we shall find that every facet of the right or wrong of their activities must be weighed. There is no reason in principle why the inquiry should not include the matter of ultra vires or abuse of legal powers.
To argue, in reference to the "interference" aspect of the projected cause of action, that plaintiffs have no status to sue, is to beg the question. Status of the plaintiff is integral to this kind of legal grievance. The questions here are, rather, whether: (a) plaintiffs' economic losses from the practices in question at defendants' cemeteries are reasonably probable and proximately result therefrom; and (b) whether such practices are to be classified as wrongful and therefore not privileged. If either inquiry is answered in the negative, it conduces to clearer thinking to postulate the result in *254 terms of no cause of action, rather than of lack of status. But see Davisson v. Mt. Moriah Cemetery Ass'n, supra; Tatman v. Rochester Lodge No. 47, I.O.O.F., supra (164 N.E., at page 720).
And so to the merits. One phase of the complaint, at least, appears to commend itself at once as within the scope of the rule under discussion. It is the allegation, albeit by indirection, in paragraph 10 of the complaint, that defendants impose such unreasonable, excessive and confiscatory charges and fees "upon the plaintiffs" as to amount to a prohibition of their right to deal with lot owners. Reading this assertion in the light of the complaint as a whole, and having in mind that plaintiffs will have to file a more definite statement of their claim, we find at least adumbrated a charge that the defendants, in order to monopolize for their own profit all the monument business in their cemeteries, are taking advantage of what plaintiffs call the lot owners' "captive" relationship with them to prevent free and competitive access of plaintiffs to the lot owners, by use of the means stated. Since, in this aspect, defendants' acts are charged to be visited directly upon the plaintiffs, there is no question as to the proximity between asserted wrongs and injuries. For purposes of the motion to dismiss, it is to be assumed (although plaintiffs must be more specific when they amend) that the excessive fees and charges were levied in connection with actual contracts with lot owners. We have concluded that if what plaintiffs say is true the injury is manifest and justification on the part of defendants absent. We have "the intentional doing of a wrongful act without justification or excuse," Louis Schlesinger Co. v. Rice, 4 N.J. 169, 181 (1950), and, consequently, a cause of action.
The action is concededly one of novel impression in this State, but in this field, which Dean Green has called the "appropriation of relational interests," "the possible situations are infinite and there is no formula, either simple or complex, through which the problems can all be adequately poised for judgment." Green, "Relational Interests," 30 *255 Ill. L. Rev. 1, 4 (1935). The novelty of a specific occasion for application of a principle in this field is no reason for according it a chilly reception. Longo v. Reilly, supra (35 N.J. Super., at page 413). What is called for is a reasonable accommodation within the framework of the remedial principle of claims for relief against behavior which is both injurious and transgressive of generally accepted standards of common morality or of law. Cf. Trautwein v. Harbourt, 40 N.J. Super. 247, 267, 268 (App. Div. 1956). As put by Harper and James in Law of Torts (1956), § 6.11, p. 510:
"This * * * involves society's interest in affording to the individual a fair opportunity to conduct his legitimate business affairs without interruption from others except in so far as such interferences are sanctioned by the `rules of the game' * * *."
The "rules of the game" afford the defendants no privilege to assess monument makers with excessive charges and costs as a condition of installing monuments or memorials where the purpose or effect is, as charged, to force lot owners to deal only with defendants in purchasing and installing such memorials and thereby prevent the fruition of plaintiffs' normal business expectancies. A public cemetery is a public charitable trust and its operation for private profit offends public policy. Atlas Fence Co. v. West Ridgelawn Cemetery, 110 N.J. Eq. 580 (E. & A. 1932); Moore v. Fairview Mausoleum Co., 39 N.J. Super. 309, 314 (App. Div. 1956). This holds even where the cemetery is operated by private interests. Parker v. Fidelity Union Trust Co., 2 N.J. Super. 362, 388, 389 (Ch. Div. 1944). We do not find it necessary, for disposition of this appeal, to determine whether the corporate powers of defendants extend to the sale of memorials to their lot owners. The power is not expressed in the statute. If they have the power, however, it is by implication, and it exists only to the extent that it is reasonably incidental to their general statutory objective of "procuring and holding lands to be used exclusively for a cemetery or a place for the burial of the dead," R.S. 8:1-1, or consequential of the right to promulgate reasonable rules and *256 regulations in the conduct of the cemetery. R.S. 8:2-10. Donohue v. Fitzsimmons, 95 N.J. Eq. 125 (Ch. 1923). There is patently no right to go into the monument business as a general commercial venture in competition with ordinary business enterprises, and therefore no contention of privilege founded upon a supposed claim of legitimate business competition will serve to justify the particular harm presently under discussion charged to be inflicted upon plaintiffs. "The justification must be `as broad as the act, and must cover not only the motive and the purpose, or, in other words, the object sought, but also the means used.'" Louis Kamm, Inc., v. Flink, supra (113 N.J.L., at page 589). We iterate that the expression of these views in nowise assumes that the charges made will be substantiated by proof or that there may not be perfect defenses. But this is not the time for concern as to ultimate substantiation nor for consideration of the justificatory factual matter set forth in defendants' brief but not yet to be found in the record.
Other phases of the charge of unlawful interference by defendants with plaintiffs' business opportunities, however, lead us to more controversial areas. The impact of the other indicated activities upon plaintiffs' business prospects is less direct and the range of justification is consequently broader. 1 Harper and James, ubi cit., supra. In respect to prospective monument business with lot owners, which plaintiffs charge they will lose because of defendants' "unreasonable rules and regulations" or unreasonable enforcement of rules and regulations, allegedly designed, in either case, to preclude lot owners from dealing with plaintiffs in order to vest a monopoly in the monument business in these cemeteries in the defendant corporations, there would appear to be a substantial basis for the argument that plaintiffs' expectancies, on the basis of the contents of the complaint, constitute such a "probable expectancy" as our Court of Chancery long ago categorized for increasing protection from "undue interference" as "our system of jurisprudence is evolved to meet the growing wants of an increasingly complex social order, * * *." Jersey City Printing Co. v. Cassidy, 63 N.J. Eq. *257 759, 765 (Ch. 1902). We need not, however, express a definitive conclusion as to that point at this juncture. But an evaluation of justification as to these aspects of the charges is much more hazardous, since, in these respects, the complaint leaves us pretty much in the dark as to just what we are dealing with. There is no precise specification of the rules or practices complained of. Clarification is needed.
There is considerable legal controversy as to the extent to which cemetery organizations impliedly possess the power, under rules or regulations inspired by considerations, for example, of public health, good order or aesthetics, to compel lot owners to deal solely with them in purchasing goods and services accessorial to interments. Cases generally contra are: Chariton Cemetery Co. v. Chariton Granite Works, 197 Iowa 403, 197 N.W. 457, 32 A.L.R. 1402 (Sup. Ct. 1924); Scott v. Lakewood Cemetery Association, 167 Minn. 223, 208 N.W. 811, 47 A.L.R. 64 (Sup. Ct. 1926); Ignatowski v. St. Mary's Polish Catholic Cemetery Co., 174 Pa. Super. 52, 98 A.2d 234 (Super. Ct. 1953); Roselawn Memorial Park v. De Wall, 11 Ill. App.2d 66, 136 N.E.2d 702 (App. Ct. 1956); People ex rel. v. Bloomington Cemetery Ass'n, 353 Ill. 534, 187 N.E. 455 (Sup. Ct. 1933); Johnson v. Cedar Memorial Park Cemetery Ass'n, 229 Iowa 749, 295 N.W. 136 (Sup. Ct. 1940). For the other point of view see Gasser v. Crown Hill Cemetery Ass'n, 103 Colo. 175, 84 P.2d 67 (Sup. Ct. 1938); Campbell v. Neshannock Presbyterian Church, 153 Pa. Super. 246, 33 A.2d 33 (Super. Ct. 1943); Orlowski v. St. Stanislaus Roman Catholic Church Soc., 161 Misc. 480, 292 N.Y.S. 333 (Sup. Ct. 1936). There is as yet no law in this State on the point beyond the indication that rules of the cemetery as to such matters must be reasonable. See Donohue v. Fitzsimmons, supra (95 N.J. Eq., at page 128).
These aspects of the complaint present grave implications of both statutory and social policy, not readily assessable with the meagre materials in the complaint as it stands. We deem it appropriate that conclusions as to the statement or existence of a cause of action in favor of plaintiffs in *258 these respects should await the filing of an amended complaint and the further progress of the cause, when fuller information may better illumine the subject matter to be dealt with and possibly render idle some or all of our present speculation.
The judgment is modified so as to deny the motion to dismiss the complaint and to direct the plaintiffs to file an amended complaint more specifically stating the particulars of their claim, in conformity with the rules of practice, within 15 days of the entry of the mandate. No costs.