## Zeitlin Estate

*Berthold W. Levy*, for petitioners.
*John T. Kehner*, for respondent.

SHOYER, *J.*, March 7, 1979—This matter comes before the Hearing Judge by petition of Joel L. Spector and Berthold W. Levy, Executors of the Estate of Solomon Zeitlin, deceased (hereinafter called petitioners) and answer of Roosevelt Memorial Park, Inc. (hereinafter called respondent). Roosevelt Memorial Park, Inc., a Pennsylvania corporation, conducts, manages and maintains a cemetery at Roosevelt Boulevard and City Line Avenue, Philadelphia, Pa., under the name of Roosevelt Memorial Park.

The parties, through their respective counsel, have entered into a written stipulation from which we adopt the following

## FINDINGS OF FACT

. . .

## DISCUSSION

We are to decide whether Rule and Regulation No. 1 (Placing of Stone Memorials) is an unreasonable curtailment of freedom of choice in a matter of great personal concern, and a restriction not essential to the legitimate interests of cemetery management. This rule of respondent cemetery corporation provides:

"Placing of Stone Memorials

"1. Marker inscriptions shall be limited to name, date of birth and date of death, relationship and expression of endearment, all of which may be in English or Hebrew, or both; also the five Hebrew letters (Abbreviation of, 'May the soul be bound up in the bond of eternal life'). In no case can the inscription exceed five lines."

This type of case brings into conflict the rights of lot owners, possessed of privileges conferred by ownership of their lots, and the rights of the cemetery companies which are privileged to promulgate reasonable rules and regulations, within certain limits, for the operation of the cemetery.

In 14 Am. Jur. 2d Cemeteries—Right of Burial, §31 (1964), the generally recognized rules on this subject are summarized in the following language:

"B. RIGHT OF BURIAL, §31. Generally.

"The right of a purchaser of a burial lot is not an absolute right, and is terminated on the discontinuance of the cemetery by the public authorities. It follows that the right of burial in a cemetery is not an absolute right of property, but merely a privilege or license, to be enjoyed so long as the place continues to be used as a burial ground, subject to municipal regulation and control and legally revocable whenever the public necessity requires. Moreover, a certificate which declares that the holder is entitled to a certain lot in a cemetery, to be used for burial purposes only, gives a right of burial which is limited to the interment of human bodies.

"Subject to the limitations above stated, *the ownership of a lot in a cemetery gives a right of burial therein which the cemetery association may not deny or abridge unreasonably in the absence of a limitation existing at the time of the purchase of such lot. The right to bury carries with it the right to do so according to the usual custom in the neighborhood. Such right, however, may be subject to reasonable rules and regulations on the part of the cemetery authority. Much depends, in determining whether the right of burial is subject to the regulations, on whether*

*they were in effect at the time of the acquisition of the lot and the purchaser had knowledge thereof."* (Emphasis supplied.)

A regulation is reasonable if it promotes safe and efficient administration, protects all of the lot holders by preserving their lots, and does so without serious interference as to matters of personal or familial concern in the conduct of the funeral and the interment: Ignatowski v. St. Mary's Polish Catholic Cemetery Company, 174 Pa. Superior Ct. 52, 54, 98 A. 2d 234 (1953). Regulations "must be reasonable, equal in their operation, and uniform in their application to all owners of lots in the cemetery." Campbell v. Neshannock Presbyterian Church, 153 Pa. Superior Ct. 246, 251, 33 A. 2d 33 (1943) (citing authorities).

The question before us, therefore, is twofold, (1) whether or not this particular regulation is a reasonable one, and, if so, (2) whether respondent's instant ruling is too narrowly restrictive.

Petitioners wish to have the words, "Author of 'The Rise and Fall of the Judean State,'" inscribed on the tombstone, but respondent has refused. The book in question is a three-volume work by decedent, and is recognized throughout the academic world as an outstanding product of scholarly research and a highly significant contribution to the history of the ancient world, unparalled in its field up to this time.

It appears that decedent requested very little with regard to his funeral. Decedent asked that the services be restricted to a "bare minimum," and particularly directed that no eulogy or other similar observance be noted thereat.

Clearly, decedent did not request anything extraordinary with respect to his funeral nor gravesite. There is nothing scandalous nor libelous about

the said inscription. Furthermore, all parties recognize the magnitude of decedent's work, and have expressly so stipulated. It was stated that decedent was the author of numerous books, and "The Rise and Fall of the Judean State" was but one. However, this book was the one in which decedent took the most pride, and therefore, it cannot be said that his request is unreasonable or vainglorious.

In Slifer v. Greenmount Cemetery Company, 164 Pa. Superior Ct. 534, 536, 67 A. 2d 584 (1949), the court said:

"It is not necessary to decide whether appellees have a restricted fee or some type of incorporeal hereditament. Cf. Pitcairn v. Homewood Cemetery, 229 Pa. 18, 77 A. 1105, with Walter v. Baldwin, 126 Pa. Superior Ct. 589, 193 A. 146. They *do* have 'the exclusive and entire *right* of Interment or Sepulture,' and this right carries with it, not the implied but, the explicit right to erect monuments. Leonard's Est., 343 Pa. 198, 202, 22 A. 2d 676, approving 10 Am. Jur., Cemeteries, §31. This is a property right, or at least a vested interest in land, constitutionally protected against destruction, abridgment or material diminution without appellees' consent. Mt. Moriah Cemetery Assn. v. Com. ex rel., 81 Pa. 235. See also 14 C.J.S. Cemeteries, §25." (Emphasis in original.) See also Janka v. Oakland Cemetery Company, 89 D. & C. 431, 433 (1954); 14 Am. Jur. 2d, Cemeteries, §§33, 34.

Although the right to erect a headstone is firmly established, counsel have cited no authorities involving regulations as to the type of inscription to be placed on the monument. Our own research has failed to uncover any pertinent cases.

Petitioners aver that respondent persisted in its refusal to permit the desired inscription and "in support of such refusal, respondent has relied, and

still does rely, on its rules and regulations. It further interprets said rules and regulations as prohibiting 'epitaphs' and categorizes the words 'Author of "The Rise and Fall of the Judean State,"' as an epitaph." Respondent's answer to paragraph 6 is "admitted."

It may be that what we have here is a mere dispute over semantics. Unquestionably, the limited inscriptions which respondent does permit constitute an epitaph. Webster's 3d New International Dictionary (1966), defines an epitaph as "an inscription on or at a tomb or a grave in memory or commemoration of the one buried there." Since we have established that the ownership of a cemetery lot carries with it the right to erect a headstone or monument at the graveside, it follows of necessity that that right must include the right of inscription. If this were not so, the right to erect a headstone would be meaningless. A faceless stone containing no information, placed among similar ones in a cemetery, would be completely useless. We then come to the question, assuming the right of inscription, of just what limitations may be placed on the inscription.

• • •

The wide range and variety of epitaphs convince us that respondent wisely endeavored to limit the inscriptions permitted on gravemarkers. Respondent's cemetery has also published restrictions on the type and size of the monument, family stone or marker. These particular rules are of no concern to us in this case because petitioners are ready to comply with all of them. The desired inscription "Author of 'The Rise and Fall of the Judean State,'" is nothing more than a brief statement of fact. As

such, it is well within the rules which respondent has adopted for marker inscriptions. The inscription's verity and brevity effectively distinguish it from flamboyant historic examples of an "epitaph," but readily admit it within the limitations of respondent's rules and regulations as to inscriptions.

Among the marker inscriptions permitted by Rule and Regulation No. 1 are "relationship and expression of endearment." Certainly the heirs designated in the will might reasonably request an inscription such as "Beloved Uncle" or "Beloved Great-uncle." Such a request the cemetery would obviously have to honor. Although the word "relationship" is connected to "expression of endearment" by the conjunction "and," we believe the conjunction may readily be replaced by the coordinating particle that marks an alternative, namely, "or." This being so then expressions such as "Beloved Historian" or, as a former teacher at Dropsie University, another testamentary legatee, then "Beloved Professor" or "Beloved Benefactor" would be appropriate. Yet petitioners have averred that any such "emotional, perhaps sentimental or tasteless, and non-factual 'expression of endearment'" would be "repugnant to decedent."

Following this line of reasoning, we can see absolutely nothing wrong with the requested inscription "Author of 'The Rise and Fall of the Judean State.'" If a person in his lifetime has achieved renown in some recognized field of endeavor, such as literature, music, art, science or politics, it is fitting and proper that his fame should be remembered in a *modest* epitaph on his tombstone. Such acknowledgment inspires the living without dishonoring the neighboring dead. Any cemetery regulation

which would forbid such a tribute must be deemed unreasonable and unenforceable. As we have explained above, however, the petitioners' request is within the mandated limitations and, therefore, we allow it.

## CONCLUSIONS OF LAW

1. This Orphans' Court Division has jurisdiction of this action brought by the executors of the estate of decedent, a lot owner in respondent cemetery, against the enforcement of a rule or regulation adopted by the cemetery corporation, under the provisions of the Act of June 30, 1972, P.L. 508, as amended, 20 Pa.C.S.A. §711(1), giving us "control of the decedent's burial."

2. Rule and Regulation No. 1 (Placing of Stone Memorials), as construed by respondent, unreasonably curtails and denies to decedent, who was granted his lot for the purpose of sepulture in the Roosevelt Memorial Park, freedom of choice in the selection of an appropriate inscription on his tombstone.

Now, for the reasons set forth above, we enter the following

## DECREE

And now, March 7, 1979, our decree of April 17, 1978, to the effect that Roosevelt Memorial Park, Inc., respondent herein named, cease and desist from hindering, preventing or interfering with the placing or inscribing and maintaining of the words "Author of the Rise and Fall of the Judean State," and no others in English and Hebrew, by petitioners in and on a tombstone or marker identifying the

grave of Solomon Zeitlin, decedent herein, provided that said tombstone or marker shall otherwise comply with the applicable Rules and Regulations of said respondent, is hereby confirmed.