**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4427-18

ANDREW POULOS,

    Plaintiff-Appellant,

v.

STATE OF NEW JERSEY,
OFFICE OF THE STATE
COMPTROLLER, and
JOSHUA LICHTBLAU,

    Defendants-Respondents.

_____

Argued November 16, 2020 – Decided August 23, 2021

Before Judges Messano, Hoffman, and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-2263-18.

R. Armen McOmber argued the cause for appellant (McOmber & McOmber, PC, attorneys; R. Armen McOmber and Matthew A. Luber, of counsel and on the briefs).

Domenick Carmagnola argued the cause for respondents (Carmagnola & Ritardi, LLC, attorneys;

Domenick Carmagnola, of counsel and on the brief;
Stacy Landau, on the brief).

PER CURIAM

This appeal is from an order dismissing plaintiff's amended complaint under the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14. We reverse the May 24, 2019 order in part to permit discovery without prejudice to further motion practice. The standard of review for motions made under Rule 4:6-2(e) requires that the amended complaint be viewed liberally to determine if there is a fundament of a cause of action. Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989). We conclude the amended complaint meets this standard in part.

I.

On October 30, 2018, plaintiff Andrew Poulos filed suit under CEPA against defendants, the State of New Jersey, Office of the State Comptroller (OSC) and Joshua Lichtblau (defendant), (collectively, defendants), who was the Director of the Medicaid Fraud Division (MFD)[1] within the OSC at all

---

[1] In 2010, the "functions, powers and duties" of the Office of the Medicaid Inspector General were transferred to the OSC, which then created the Medicaid Fraud Division. E.B. v. Div. of Med. Assistance & Health Servs., 431 N.J. Super. 183, 204 (App. Div. 2013). "The Medicaid Fraud Division conducts investigations of fraud, waste and abuse, performs background checks on all

relevant times. Defendants' motion under Rule 4:6-2(e) was granted without prejudice in February 2019. Plaintiff filed an amended complaint against the same defendants on March 15, 2019, raising the same claims. We rely on the facts alleged by plaintiff in his amended complaint.

## A.

Plaintiff was employed as a supervising investigator within the MFD of the OSC from November 2011 until his position was terminated on December 29, 2017. In February, the OSC commenced an investigation of Medicaid fraud in the Lakewood area. Known as "Operation Blue Claw" (the Operation), plaintiff claimed he was "the point person for the entire operation." He alleged he supervised the investigations, communicated with "partner agencies," and briefed the MFD director, its deputy director and its chief of investigations.

The Operation included an amnesty from prosecution component (amnesty program) that plaintiff "designed" in conjunction with the director, deputy director and chief of investigations. The amnesty program "permit[ted] individuals in receipt of [improperly received] Medicaid benefits to turn themselves in and pay back what they received without being criminally

---

Medicaid provider applicants, and coordinates oversight efforts among all State agencies that provide and administer Medicaid services and programs." Ibid., n.11.

charged." Defendant obtained approval from the Comptroller for the amnesty program in January 2017.

Plaintiff claimed that a representative from the Ocean County Prosecutor's Office suggested it would be problematic for the State to grant amnesty for losses of more than $75,000 — the threshold for a second-degree crime. Therefore, on July 27, 2017, defendant wrote to the Comptroller advising that under the amnesty program, "the MFD would not seek full repayment of Medicaid benefits associated with the applicant's children so as to keep the amounts under $75,000, thereby reducing the chance the agreed upon amount would result in second-degree charges." Plaintiff's amended complaint does not state if a response was obtained.

In late November 2017, counsel for "numerous applicants" advised plaintiff that his clients needed more than six months "to pay back the full amount owed." Plaintiff met with defendant, the deputy director and chief of investigations, memorializing this discussion in a memorandum dated November 27, 2017. Defendant "was not willing" to ask the Comptroller to extend the time for repayments, because the amnesty program allowed six months for repayment.

4

Plaintiff's amended complaint states that he initiated "the topic of negotiating the repayment amounts down to reasonable amounts so payment can be made in the time frame." The chief of investigations was "hesitant," and the deputy director thought it would be "problematic." Plaintiff countered that if individuals were prosecuted, they would have one to three years to pay restitution, and that this would be consistent with the purpose of the program by "reduc[ing] the MFD case load by bringing people into compliance without prosecution." Defendant apparently then "authorized [plaintiff] to negotiate the repayment amounts to address those with legitimate financial hardships." If that was not successful, defendant would then discuss with the Comptroller the issue of extending payment terms.

Plaintiff was contacted by the attorney for a party who already signed a settlement agreement, asking for a reduction in the repayment amount for his client. Plaintiff referred the attorney to defendant. "Upon information and belief," plaintiff alleges defendant spoke with the Comptroller about a reduction, but the Comptroller was not aware cases were settling at less than the full amount. Plaintiff claims defendant told the Comptroller that plaintiff was reducing the settlement amounts without MFD knowledge and defendant had not authorized this.

A-4427-18

On December 8, 2017, plaintiff was removed from handling the amnesty program. On December 11, 2017, plaintiff sent an email to the chief of investigations, with a copy to the chief of staff, stating he had the "impression" the Comptroller thought he had acted "unilaterally" in settling cases for a reduced amount, but that defendant knew about this. Plaintiff claimed his removal from the amnesty program indicated the Comptroller "has not been provided an accurate accounting of the operation of the program."

On December 13, 2017, plaintiff sent another email to the chief of investigations, with a copy to the chief of staff, reporting it was rumored he was terminated from his position. He alleged this damaged his reputation and compromised the MFD investigations.

On December 14, 2017, plaintiff was advised his position was discontinued effective December 29, 2017. He claims this was done in retaliation for his emails that contradicted the claim he unilaterally negotiated settlements under the amnesty program for less than the full amount.

Plaintiff's amended complaint claims he reported several issues about defendant to his superiors. He reported that defendant instructed plaintiff and others not to tell the Comptroller about deviations from the "directives" of the amnesty program. He claims it was a deviation from these directives to settle

6

or renegotiate the cases for less than the full amount. Plaintiff reported that defendant denied knowledge of this and blamed plaintiff for these settlements. Plaintiff reported that defendant withheld "key details" from the Comptroller about the amnesty program and the Operation and "improperly" disclosed internal discussions that compromised the investigations.

The amended complaint alleges retaliation in violation of CEPA. Plaintiff claims his emails to the chief of investigations exposed (1) an ethics violation by defendant when he purportedly lied to the Comptroller about plaintiff settling MFD cases for less than their full amount without authorization and (2) official misconduct, N.J.S.A. 2C:30-2, by defendant for that same conduct. As a result of reporting what he believed was unlawful conduct, plaintiff alleges he was discharged from employment and sustained damages.

## B.

The trial court granted defendants' motion to dismiss the amended complaint under Rule 4:6-2(e), finding plaintiff did not "articulate any violation of a law, . . . a rule or regulation promulgated pursuant to law." Plaintiff could not show he reasonably believed defendant's conduct was unlawful. The court noted that plaintiff conceded "the settlements were authorized by law." In addition, the ethics code provision relied on by plaintiff was too vague to support

7

the CEPA claim because it provided only "a broad overview of expected conduct for State employees." The court found plaintiff did not show a "whistleblowing . . . activity that went against a clear mandate of public policy." Instead, the court found "[p]laintiff had issues with his removal from the [p]rogram [and] decided to report [defendant's] alleged withholding of information to the Comptroller." This was a "private dispute regarding [p]laintiff's role in the [p]rogram and organization," not an issue of public concern.

On appeal, plaintiff argues he pleaded all the elements for a prima facie case under CEPA. He claims the trial court erred by finding he did not have a reasonable belief that defendants violated the law. Although plaintiff contends the amended complaint does assert there has been a violation of public policy, this finding is not required to find a violation of CEPA. Plaintiff also contends the ethics code serves as a basis for a CEPA violation. Plaintiff argues that a recent decision by the New Jersey Supreme Court, Chiofalo v. State, 238 N.J. 527, 541 (2019), supports his claim.

II.

We review an order dismissing a complaint under Rule 4:6-2(e) by using the same standard as the trial court. Smerling v. Harrah's Entm't, Inc., 389 N.J. Super. 181, 186 (App. Div. 2006). The motion "may be granted only if,

accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." Ibid. The reviewing court "searches the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Printing Mart-Morristown, 116 N.J. at 746 (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)). At the motion to dismiss stage in the litigation, "the [c]ourt is not concerned with the ability of plaintiff[] to prove the allegation contained in the complaint." Ibid. At this stage, the plaintiff is "entitled to every reasonable inference of fact." Ibid. We are not bound by the trial court's "construction of the legal principles." Smerling, 389 N.J. Super. at 186 (quoting Lombardo v. Hoag, 269 N.J. Super. 36, 47 (App. Div. 1993)). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

CEPA prohibits employers from taking "any retaliatory action" against an employee who:

> a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the

9

employer, or another employer, with whom there is a business relationship, that the employee reasonably believes:

> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ; or
>
> (2) is fraudulent or criminal . . . ;

b. Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer . . . ; or

c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ;
>
> (2) is fraudulent or criminal . . . ; or
>
> (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

[N.J.S.A. 34:19-3.]

CEPA is remedial legislation that is to be interpreted liberally. Dzwonar v. McDevitt, 177 N.J. 451, 463 (2003). It was intended to protect employees, encourage them to report illegal or unethical activities in the workplace, and

discourage employers from engaging in such conduct. Id. at 461 (citing Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405, 431 (1994)).

To establish a prima facie case under CEPA, a plaintiff must prove each of the following:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy;
>
> (2) he or she performed a "whistle-blowing" activity . . . ;
>
> (3) an adverse employment action was taken against him or her; and
>
> (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.
>
> [Lippman v. Ethicon, Inc., 222 N.J. 362, 380 (2015) (citing Dzwonar, 177 N.J. at 462).]

Plaintiff claims defendant lied to the Comptroller about key elements of the amnesty program, specifically by denying knowledge that the cases were settling for less than full value. Plaintiff contends defendant's conduct was unethical under N.J.S.A. 52:13D-23(e)(7). He claims defendant's conduct constituted a violation of the official misconduct statute, N.J.S.A. 2C:30-2. Based on these statutes, plaintiff contends defendant's conduct in lying to the Comptroller was actionable under CEPA.

11

A-4427-18

The amended complaint was dismissed under Rule 4:6-2(e) prior to discovery. On this sparse record, we only conclude plaintiff's allegations that defendant lied to the Comptroller about the parameters of the amnesty program as defendant implemented it were not actionable under N.J.S.A. 34:19-3(a) (subsection "a") of CEPA. We only have the facts as alleged in the amended complaint, which are that defendant was not forthcoming with the Comptroller about his role in the settlements. Although none of this may be true, we are required to accept the pleadings as they currently exist at this stage of the litigation. We are constrained to reverse and remand for further proceedings under subsection "a" of CEPA based on the alleged misrepresentations by defendant to the Comptroller about the program's implementation.

That said, the trial court did not err by dismissing other claims raised by plaintiff in the amended complaint. First, plaintiff alleges there was a directive of the Comptroller that required cases to be settled at full value and that he reasonably believed defendant violated this directive by settling cases at less than the full amount. Assuming there was such a directive, the amended complaint alleges plaintiff initiated the idea about negotiating settlement for less than the full amount. Based on the pleadings, plaintiff either was complicit in the violation or could not reasonably believe within the context of CEPA that

12

there was a violation, given it was his idea. Thus, the amended complaint failed to allege a claim under subsection "a" of CEPA to the extent it asserted that plaintiff reported a violation of the Comptroller's directive.

Second, we do not find that plaintiff's amended complaint asserted a claim under N.J.S.A. 34:19-3(b) (subsection "b"). Subsection "b" does not apply because plaintiff did not claim he provided "information to, or testifie[d] before, any public body conducting an investigation" about a violation of a law, rule or regulation.

Third, N.J.S.A. 34:19-3(c) (subsection "c") also does not apply here. That subsection provides that an employer cannot take retaliatory action against an employee who

> c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:
>
> > (1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ;
> >
> > (2) is fraudulent or criminal . . . ; or
> >
> > (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

Plaintiff does not claim he objected to settling the cases for less than full value in violation of the alleged directive. Instead, based on the amended complaint, he initiated the concept and participated in it. Plaintiff also did not allege he objected to or refused to participate with defendant in misrepresenting to the Comptroller the key elements of the amnesty program. Therefore subsection "c" does not apply to the allegations in the amended complaint because plaintiff either lacked a reasonable belief that a directive was being violated or did not object or refuse to participate in the alleged misrepresentations by defendant about key elements of the program.

In summary, we reverse the order of dismissal under <u>Rule</u> 4:6-2(e) in part and remand for discovery on plaintiff's amended complaint but only to the extent it alleges under N.J.S.A. 34:19-3(a) that defendant withheld key details from the Comptroller about the amnesty program and not that a directive allegedly was violated. Our remand does not preclude further motion practice following the close of discovery.

Affirmed in part and reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4427-18

A-4427-18