**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0737-24

THE ESTATE OF JAMES EVANS
by his General Administrator and
Administrator Ad Prosequendum
DAVID EVANS, and DAVID EVANS
and LAURYN EVANS, individually,

     Plaintiffs-Appellants,

v.

DAWN WARNER, R.N., DR. SAIRA
AHMED, DR. BRYAN DAVIS, DR.
AHSAN ABDULGHANI,
WEDGEWOOD AMERICANA,
WEDGEWOOD RESIDENTIAL
HEALTH CARE FACILITY, and
HELPING HAND BEHAVIORAL
HEALTH,

     Defendants-Respondents.

_____

Argued April 30, 2025 – Decided May 16, 2025

Before Judges Currier, Marczyk, and Paganelli.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-0340-24.

Robert J. Banas argued the cause for appellants (Eichen Crutchlow Zaslow, LLP, attorneys; Robert J. Banas, on the brief).

Walter F. Kawalec, III, argued the cause for respondent Helping Hand Behavioral Health (Marshall Dennehey, PC, attorneys; Ryan T. Gannon, Walter F. Kawalec, III, and Victoria L. Pepe, on the brief).

PER CURIAM

On leave granted, plaintiffs the Estate of James Evans, by his general administrator and administrator ad prosequendum David Evans, and David and Lauryn Evans, individually, appeal from the trial court's October 11, 2024 interlocutory order denying their motion to affirm the sufficiency of their affidavits of merit (AOM) as to defendant Helping Hand Behavioral Health (Helping Hand) and dismissing Helping Hand from the case with prejudice.

The primary issues on appeal are whether the trial court erred in finding plaintiffs' AOMs were statutorily deficient and that it was undisputed that Helping Hand did not employ the physicians and nurse named in the AOMs, thereby dismissing Helping Hand with prejudice without allowing plaintiffs to conduct limited discovery on their vicarious liability claim. Following our review of the record and the applicable legal principles, we reverse and remand.

I.

This medical negligence action arises from the death of decedent James Evans. Plaintiffs allege various defendants were negligent in the care and treatment rendered to decedent and that Helping Hand was vicariously liable for the care provided by certain medical professionals. We glean the facts below from the limited record, including the August 2024 Ferreira[1] conference, and the October 2 and 11, 2024 hearings on plaintiffs' motion to affirm the sufficiency of their AOMs.

Helping Hand is licensed by the State Department of Health to provide "Adult Partial Care Services" in Clayton. In January 2023, decedent was admitted to Wedgewood Americana (Wedgewood)—a residential health care facility in Glassboro—where he received medical care and treatment from defendants Dr. Saira Ahmed, Dr. Bryan Davis, Dr. Ahsan Abdulghani, and Dawn Warner, R.N. (Wedgewood defendants). During the course of that admission, decedent suffered hypoglycemia after the Wedgewood defendants allegedly negligently administered insulin to treat his diabetes, causing his unfortunate passing.

---

[1] Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144 (2003).

A-0737-24

In February 2024, plaintiffs filed a complaint seeking to hold Helping Hand vicariously liable for the alleged negligence of the Wedgewood defendants. Plaintiffs asserted Helping Hand was vicariously liable because the Wedgewood defendants were agents or employees of Helping Hand. In June 2024, Helping Hand filed an answer denying the allegations and demanding that plaintiffs tender an AOM pursuant to the affidavit of merit statute, N.J.S.A. 2A:53A-26 to -29 (AMS).

Plaintiffs served two AOMs: one authored by Robin Goland, M.D., and another authored by Katherine Moses, R.N. Dr. Goland's AOM stated: "Based on [her] review [of the medical records], . . . there exist[ed] a reasonable probability that the care . . . exercised . . . by [the Wedgewood defendants] . . . and Helping Hand . . . fell outside acceptable professional treatment standards." Nurse Moses provided a similar AOM, but specifically addressed the care provided by Nurse Warner.

Helping Hand subsequently objected to the AOMs, arguing neither expert was qualified to assert "direct" claims against Helping Hand. It further objected to the AOMs insofar as they alleged vicarious liability as to Helping Hand, pursuant to Hargett v. Hamilton Park OPCO, LLC, 477 N.J. Super. 390 (App. Div. 2023).

In August 2024, the court held a <u>Ferreira</u> conference to address the adequacy of plaintiffs' AOMs. Relevant to this appeal, plaintiffs contended that Wedgewood might "ha[ve a] connection and . . . []be affiliated with . . . Helping Hand." They confirmed Helping Hand and Wedgewood were only in this case based on a theory of vicarious liability and that an AOM does not need to specifically "spell[] . . . out" vicarious liability. Plaintiffs acknowledged there was an issue regarding whether the Wedgewood defendants were in fact affiliated with Helping Hand, but contended "that's an issue for discovery at this initial procedural stage."

In turn, Helping Hand asserted Wedgewood is a separate entity, with a separate facility located in a different municipality. Helping Hand argued the AOMs failed to name any staff member or employee associated with Helping Hand. Because counsel for the Wedgewood defendants lacked any records to assert a position regarding the objections, the court entered an August 12, 2024 order reserving its decision; granting defendants an additional ten days to notify plaintiffs about any objections as to the sufficiency of the AOMs; providing plaintiffs a sixty-day extension to serve AOMs on all parties; and allowing the parties to request another <u>Ferreira</u> conference.

A-0737-24

Later that month, plaintiffs moved to affirm the sufficiency of the AOMs or, alternatively, to stay the time between the <u>Ferriera</u> conference and the date of the motion. Helping Hand opposed the motion. The court entertained oral argument on October 2, 2024. Plaintiffs contended the AOMs complied with the AMS because they were authored by qualified persons and identified Helping Hand as a potentially liable entity. The court noted the objections to the AOMs concerned decedent not receiving treatment at a Helping Hand facility and Helping Hand not employing the Wedgewood defendants. Plaintiffs responded that whether the Wedgewood defendants were employees or agents of Helping Hand was an issue for discovery and separate from the procedural issue regarding the sufficiency of the AOMs.

When the court questioned whether plaintiffs had any evidence indicating "any degree of control by Wedgewood over Helping Hand," plaintiffs responded that Helping Hand's website lists Wedgewood as one of its residences. Plaintiffs argued the website, "on its face," represented "to the public that there's some type of affiliation . . . or interrelationship" between Helping Hand and Wedgewood, which was an issue that required discovery and did not concern the AOMs. Plaintiffs asserted Helping Hand offered no evidence showing it never employed the Wedgewood defendants.

6

In turn, Helping Hand argued the AOMs "place[d] all defendants in the same statement instead of [specifying] the care, skill or knowledge exercised by each of these defendants." It contended the AOMs were insufficient because they did not clearly specify that plaintiffs asserted a claim of vicarious liability against it but rather could be interpreted as plaintiffs' alleging a direct claim of negligence. Helping Hand also relied on Hargett, arguing the AOMs provided insufficient notice of a vicarious liability claim.

The trial court inquired about the relationship between Wedgewood and Helping Hand, to which Helping Hand's counsel responded "they are two separate distinct entities and that is the purpose behind the decision in Hargett," entitling separate entities to their own AOMs with respect to vicarious liability. Counsel conceded the Helping Hand website indicated Wedgewood is one of its "residences" but asserted "just because there may be an overlap in ownership between two separate entities does not mean that they were the same entity." Counsel described the relationship as an "affiliation" with "no connection in ownership." The trial court was not provided with a certification from a representative of Helping Hand or Wedgewood explaining the relationship, if any, between Helping Hand and the Wedgewood defendants.

7

In rendering its decision, the court initially denied plaintiffs' motion, finding the AOMs insufficient because Helping Hand neither employed the Wedgewood defendants, nor treated decedent at its facility. The court "appreciate[d] how the facts of this case [were] not exactly on point with Hargett," but applied the principle that an affiant must "offer an opinion as to the named facilities' nurses standing alone." The court deemed plaintiffs' AOMs insufficient because they did not provide Helping Hand with notice of a vicarious liability claim, did not reference the relevant care provided by Helping Hand, and failed to identify "any individual . . . for whom Helping Hand would be vicarious[ly] liable." The court further commented, "it's undisputed that Helping Hand [did] not employ" any of the Wedgewood defendants and "[t]here is nothing in th[e] record to establish that Helping Hand has any control over the . . . [Wedgewood] defendants."

The court continued its colloquy with the parties after rendering its decision. Plaintiffs, in turn, noted they disagreed with the court's statement that it was undisputed Helping Hand did not employ the Wedgewood defendants. Plaintiffs asserted they did, in fact, dispute that there was no employment relationship and asked "how would we know that [the Wedgewood defendants were] employees of Wedgewood" in the absence of any evidence in the record

8

and without discovery on that issue. As such, plaintiffs asked the court to clarify how they could provide an AOM in accordance with its decision and requested limited discovery on the relationship between the parties with respect to vicarious liability. The court subsequently reserved its decision to determine whether it should allow limited discovery.

On October 11, 2024, the court rendered an oral decision denying plaintiffs' motion to affirm the sufficiency of the AOMs and request for limited discovery and dismissed the claims against Helping Hand with prejudice. Incorporating its decision from October 2, the court found that while the AOMs identified the parties who allegedly deviated from the standard of care, "there [was] no dispute" that the Wedgewood defendants never provided any care or treatment to decedent at the Helping Hand facility. The court also reiterated that it was undisputed the treatment rendered to decedent occurred solely at Wedgewood and found nothing in the record to "establish that Helping Hand employed any of the named defendants during the time period at issue." The court viewed plaintiffs' theory—that the screenshots of Helping Hand's website suggest Wedgewood was one of its residences—implicated "possible additional coverage, but not professional malpractice."

We subsequently granted plaintiffs' motion for leave to appeal from the October 11, 2024 interlocutory order.

II.

On appeal, plaintiffs principally contend the court erred in finding the two AOMs failed to satisfy the statutory requirements of the AMS as to Helping Hand. They maintain that whether Helping Hand is, in fact, vicariously liable for the Wedgewood defendants is irrelevant to determine the sufficiency of the AOMs, but rather is an issue for discovery. They further argue the court prematurely found Helping Hand cannot be vicariously liable without allowing any discovery and improperly denied them the ability to cure any deficiencies in the AOMs.

More particularly, plaintiffs argue the AOMs served on Helping Hand were sufficient because the requirement for an AOM from a "like-licensed" professional does not apply to claims based on vicarious liability. See Hill Int'l, Inc. v. Atl. City Bd. of Educ., 438 N.J. Super. 562, 591 (App. Div. 2014). They contend Helping Hand never objected to the timing of service of the AOMs or their language and failed to offer any evidence substantiating its claim that it did not employ the Wedgewood defendants. Plaintiffs further assert the court erred in relying on Hargett to find the AOMs failed to identify the individuals for

10

whom Helping Hand could be vicariously liable because that case focused on "whether the [AOM] sufficiently identified the responsible parties for purposes of vicarious liability." Here, they note the AOMs clearly identify the Wedgewood defendants.

We review de novo "all decisions on [a] motion[] to dismiss." Castello v. Wohler, 446 N.J. Super. 1, 14 (App. Div. 2016) (recognizing the de novo standard of review on a trial court's dismissal under the AMS). A reviewing court must "'pass no judgment on the truth of the facts alleged' in the complaint and must 'accept them as fact only for the purpose of reviewing the motion to dismiss.'" Mueller v. Kean Univ., 474 N.J. Super. 272, 283 (App. Div. 2022) (quoting Banco Popular N. Am. v. Gandi, 184 N.J. 161, 166 (2005)). "[W]hether plaintiff satisfied the AOM statute is a matter of statutory interpretation for which [the] standard of review is de novo." Hoover v. Wetzler, 472 N.J. Super. 230, 235 (App. Div. 2022).

"The submission of an appropriate AOM is an element of a professional malpractice claim." Hargett, 477 N.J. Super. at 396. A plaintiff's failure to provide a sufficient affidavit is "deemed a failure to state a cause of action." N.J.S.A. 2A:53A-29. Similarly, "[t]he failure to deliver a proper affidavit within

11

the statutory time period requires a dismissal . . . with prejudice." Ferreira, 178 N.J. at 146-47.

In medical negligence actions, a plaintiff "must show that the complaint is meritorious" by satisfying the AOM requirements outlined in N.J.S.A. 2A:53A-27. Wiggins v. Hackensack Meridian Health, 259 N.J. 562, 574 (2025). Under the AMS, a plaintiff must,

> within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices.
>
> [N.J.S.A. 2A:53A-27.]

An additional time period of sixty days may be granted upon a showing of "good cause." Ibid. However, "[a] 'plaintiff's failure to serve the affidavit within 120 days of the filing of the answer is considered tantamount to the failure to state a cause of action, subjecting the complaint to dismissal with prejudice.'" Wiggins, 259 N.J. at 575 (quoting Ferreira, 178 N.J. at 150). Additionally, the affiant must meet the same requirements as expected of an expert at trial. Haviland v. Lourdes Med. Ctr. of Burlington Cnty., Inc., 250 N.J. 368, 377-78 (2022).

Our Supreme Court has noted the legislative purpose of the AMS is "not intend[ed] to 'create a minefield of hyper-technicalities in order to doom innocent litigants possessing meritorious claims.'" Id. at 378 (quoting Ferreira, 178 N.J. at 151). Rather, the Court recently reiterated the "dual purposes of the [AMS]": "to weed out frivolous lawsuits early in the litigation while, at the same time, ensuring that plaintiffs with meritorious claims will have their day in court." Wiggins, 259 N.J. at 575 (quoting Ferreira, 178 N.J. at 150).

"These principles can extend to certain vicarious liability claims." Hargett, 477 N.J. Super. at 396. "An AOM is required 'when the plaintiff's claim of vicarious liability hinges upon allegations of deviation from professional standards of care by licensed individuals who worked for the named defendant.'" Ibid. (quoting Haviland, 250 N.J. at 381). Thus, "[a]t a minimum, the AOM statute entitles a defendant facing a vicarious liability claim to an AOM limited to alleged deviations by its own licensed employees." Id. at 389.

The court here mistakenly relied on Hargett in finding the AOMs were insufficient because that case is factually distinguishable from this matter. There, the decedent initially resided at the defendant Alaris Health (Alaris) nursing facility for one month and later developed serious health-related issues. Id. at 393. She was subsequently transferred to Jersey City Medical Center

(Jersey City), where her condition worsened. Ibid. After passing shortly thereafter, the plaintiff filed a medical negligence action against Jersey City and Alaris based on the negligent treatment rendered by their nursing staff, but the complaint did not name any individual nurses. Id. at 393-95.

The plaintiff served a single AOM on Jersey City and Alaris stating there existed a reasonable probability that both facilities and "members of their nursing and nursing administrative staff," without specifically identifying any specific medical professionals, deviated from the standard of care by failing to provide appropriate treatment to the decedent. Id. at 394. Alaris objected to the AOM and moved to dismiss because the "AOM was a blanket statement that failed to identify any individually negligent persons or acts." Ibid.

In Hargett, the trial court found the AOM was deficient because it did not "'provide specific notification as to a specific employee [regarding] a specific claim of negligence' and failed to provide 'notice as to who may have violated' the applicable standard of care." Id. at 395. On appeal, the plaintiff argued the trial court erred because she pleaded a valid vicarious liability claim based on the "collective failure" of Alaris's nursing staff to provide proper treatment and was not required to identify any individual nurses in the complaint or the AOM. Ibid.

14

We affirmed the dismissal, concluding the AOM was insufficient to support the plaintiff's vicarious liability claim because "it [was] not possible to identify" any negligent nurses of Alaris. Id. at 397-98. We noted that an AOM need not always name the licensed person who forms the basis for vicarious liability provided "it was possible to identify by the description within the AOM the licensed person or entity alleged to have deviated from the applicable standard of care." Ibid. However, we noted, "the AOM refer[red] generally to the entire Alaris Health nursing staff[,] . . . indiscriminately combine[d] the nursing staffs of two separate facilities," and failed to identify any individual nurses for whom Alaris could be vicariously liable. Id. at 398. This court reasoned that a single AOM's ambiguous reference to all nurses at separate facilities deprived Alaris of its right to an appropriate AOM offering "a clear opinion that its own nurses deviated from the applicable standard of care." Ibid.

The facts before us are distinguishable from those in Hargett. In Hargett, we precluded the plaintiff from serving a single AOM that collectively opined on the alleged negligent care provided at two distinct facilities and their respective nurses because the decedent received separate treatment from both facilities at different points in time, and thus the plaintiff was required to serve separate AOMs to distinguish between the care provided by the nurses at each

15

facility.  Id. at 397.  Here, however, plaintiffs did not need to obtain a separate AOM as to Helping Hand because decedent only received treatment at one facility by the Wedgewood defendants, who plaintiffs assert were agents of Helping Hand.

Plaintiffs' AOMs were sufficient to put Helping Hand on notice because, unlike the AOMs in Hargett, they specifically named the physicians and the nurse who were purportedly negligent in the care and treatment rendered to decedent.  That is, Helping Hand was not left to guess as to which licensed persons plaintiffs alleged were negligent.  Moreover, when plaintiffs' AOMs are read in conjunction with their complaint—which clearly articulated plaintiffs' vicarious liability theory against Helping Hand—we are satisfied plaintiffs fulfilled their obligations under the AMS.

The AOMs sufficiently identify the Wedgewood defendants as the alleged negligent individuals for whom Helping Hand can be vicariously liable. Because plaintiffs' vicarious liability claim against Helping Hand is based solely on the negligent acts of the Wedgewood defendants, as Helping Hand's employees or agents, plaintiffs needed only to obtain and serve a single AOM identifying the Wedgewood defendants.

In emphasizing that none of the Wedgewood defendants provided any care or treatment at the Helping Hand facility, the court improperly concluded that Helping Hand could not be liable for the Wedgewood defendants' alleged negligence. The issue before the court was whether the AOMs identify the individuals who allegedly deviated from the standard of care. Given the AMS merely required plaintiffs to make a threshold showing of a meritorious claim, and that a motion to dismiss obligates courts to accept the allegations of fact as true, the court prematurely determined Helping Hand cannot be vicariously liable for treatment that occurred at Wedgewood, especially in the absence of any discovery as to the parties' relationship or affiliation.

The test for determining the adequacy of a pleading is "whether a cause of action is 'suggested' by the facts." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)). "[A] reviewing court 'searches the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary.'" Ibid. (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)). A plaintiff is "entitled to every reasonable inference of fact." Ibid. "At this preliminary stage of the litigation

A-0737-24

[courts are] not concerned with the ability of plaintiffs to prove the allegation contained in the complaint." Ibid. Rather, courts should seek to "ascertain the suggestion of a cause of action that could be fleshed out with further discovery." Gandi, 184 N.J. at 184.

The trial court's consideration of whether plaintiffs can ultimately prove vicarious liability exceeded the narrow scope of the AOM issue before it. That is, whether the Wedgewood defendants were agents or employees of Helping Hand is a separate and distinct issue. The court was not tasked with making a factual determination as to whether Helping Hand will ultimately be found vicariously liable for the Wedgewood defendants' actions. That determination could not be made on this sparse record, and the court erred in prematurely reaching that conclusion.

Considering the early stage of this litigation and the liberal standard for motions to dismiss, plaintiffs properly pled a claim of vicarious liability against Helping Hand. Plaintiffs' complaint asserts the Wedgewood defendants are "actual and/or apparent agents, servants and/or employees of [the Wedgewood defendants]," and, as such, Helping Hand is vicariously liable for the negligent acts of the Wedgewood defendants, assuming the allegations are true. The

record contains sufficient facts to infer Helping Hand may be vicariously liable for the acts committed by the Wedgewood defendants.

The court appeared concerned with plaintiffs' ability to prove the existence of an employment or agency relationship. The court noted, "it's undisputed that Helping Hand [did] not employ" any of the Wedgewood defendants and "[t]here is nothing in th[e] record to establish that Helping Hand has any control over the . . . [Wedgewood] defendants." At this juncture, there is no record other than the pleadings because no discovery was conducted, and the court's findings are belied by plaintiffs' complaint wherein they allege the Wedgewood defendants were agents of Helping Hand. Plaintiffs were placed in the untenable position of proving the facts alleged in the complaint prior to the commencement of discovery. The court mistakenly concluded, based on the representation of counsel—without any affidavit or certification from any representative of Helping Hand—that the Wedgewood defendants were in fact not employees of Helping Hand. Again, because the parties did not have the opportunity to conduct proper discovery, the court lacked a basis to conclusively determine that the Wedgewood defendants were not employees or agents of Helping Hand.

Reversed and remanded for further proceedings consistent with this opinion.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-0737-24